1
2
3
4
5
6
7
8                      UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   RAMON QUESADA,                          No.  2:23–cv–311–DAD–KJN

12                 Plaintiff,                 FINDINGS AND RECOMMENDATIONS ON
                                             DEFENDANTS' MOTIONS TO DISMISS
13          v.
                                              (ECF No. 25, 28, 29, 30)
14   MARTEN TRANSPORT, LTD, et al.,

15                 Defendant.

16

17          Plaintiff alleges thirteen claims under California law related to his previous employment

18   with defendant Marten Transport, Ltd.  (See ECF No. 24.)  Defendants now move for dismissal.[1]

19   (ECF Nos. 25, 28, 29, and 30.)  For the reasons stated below, defendants' motions should be

20   granted in part and denied in part as follows:  the claim of CFRA interference (Claim 7) should be

21   dismissed without leave to amend; the claims of FEHA harassment (Claim 2), breach of express

22   oral contract (Claim 9), and intentional infliction of emotional distress (Claim 13) should be

23   dismissed with leave to amend (if desired); and the claims for failure to provide reasonable

24   accommodations (Claim 4); CFRA retaliation (Claim 8); breach of an implied-in-fact contract

25   (Claim 10), and negligent hiring, supervision, and retention (Claim 11) are sufficiently pleaded.

26   _____

27   [1] On July 11, 2022, the court in the Central District of California found defendants' motions
     appropriate for decision without oral argument.  (ECF No. 46.)  Upon a change of venue to this
28   district, the assigned district judge referred these motions to the undersigned for issuance of
     findings and recommendations.  (See ECF Nos. 73, 80.)

1    I.    **Factual Background**[2]

2         Plaintiff is a 70 year old man who worked for Marten Transport from May of 2008

3    through September of 2020.  (ECF No. 24 at ¶¶ 14, 20(b).)  During his time as a truck driver,

4    plaintiff was an exceptional employee, with only two recorded instances of disciplinary actions.

5    (Id. at ¶ 15 (detailing numerous instances of positive job performance); ¶ 17(a)-(c) (noting two

6    disciplinary issues).)  However, starting in 2017, defendants Grieling, Bauer, and Crandall, as

7    Marten Transport's agents and plaintiff's superiors, took a number of allegedly discriminatory

8    acts because of plaintiff's age and disabilities that ultimately led to plaintiff's termination in

9    September of 2020.  (See Id. at ¶¶ 17(d)-20(b).)

10        On July 17, 2017, plaintiff's son was involved in a severe accident that prompted plaintiff

11   to take three weeks of paid time off ("PTO"), which was approved by Crandall (Marten

12   Transport's dispatcher/manager.  (Id. at ¶ 17(e).)  During this time, Grieling (Marten Transport's

13   human resource senior generalist) replaced a week of plaintiff's PTO hours with a week of "leave

14   entitlement" time that was reserved for California Family Rights Act ("CFRA") requests.  (Id. at

15   ¶ 17(f).)  Per company policy, this triggered a rolling 12-month period that would limit plaintiff's

16   future number of days available under CFRA.  (Id. at ¶ 17(g).)  Plaintiff found Grieling's action

17   odd; he then learned from co-workers Grieling had a reputation of telling Marten Transport's

18   drivers who were in their sixties they were old and encouraged them to retire.  Plaintiff became

19   worried Grieling was targeting plaintiff with his actions.  (Id. at ¶¶ 17(h)-(i).)

20        On July 17, 2018, plaintiff went to an emergency room for an ischemic stroke that caused

21   him to have temporary partial blindness.  (Id. at ¶ 17(k).)  Plaintiff's ophthalmologist placed him

22   on medical leave until October 27, 2018, and Grieling and Crandall did not express any concerns

23   with this leave.  (Id. at ¶ 17(l).)  However, a month later plaintiff received a letter from Marten

24   Transport stating his medical leave would end on September 16, 2018, because plaintiff used

25   CFRA hours instead of PTO hours in July of 2017.  (Id. at ¶ 17(m).)

26   _____

27   [2] The facts here derive from the first amended complaint (ECF No. 24) and are construed in a
     light most favorable to plaintiff, the non-moving party.  Walter v. Drayson, 538 F.3d 1244, 1247

28   (9th Cir. 2008).

In September of 2018, Grieling called plaintiff a few days before plaintiff's return to work, expressing concern about plaintiff's age and eyesight and asking if plaintiff had thought about resigning instead of returning to work.  (Id. at ¶ 17(o).)  Plaintiff told Grieling his health was fine and he did not have any intentions to retire, but Grieling continued to tell plaintiff he could just resign because of his disability and age instead.  (Id. ¶ 17(p).)  Grieling finished the call by telling plaintiff, "you could make it easier on yourself."  (Id.)

On July 17, 2019, plaintiff was diagnosed with a torn rotator cuff and was scheduled for a November surgery.  (Id. at ¶ 17(q).)  The doctor recommended plaintiff be placed on light duty, such as going on shorter and less strenuous routes.  (Id.)  However, Crandall refused to change plaintiff's duties, telling him he either must be 100%, without restrictions or not work at all.  (Id.)  This forced plaintiff to continue working at full capacity until his surgery on November 12, 2019; during this time, plaintiff's injuries worsened into a full thickness rotator cuff tear and a bicep tendon tear.  (Id. at ¶ 17(r).)  After the November surgery, Crandall approved plaintiff's medical leave and scheduled him to return to work on February 10, 2020; however, on January 14, 2020, plaintiff received a letter stating his CFRA would be exhausted by February 3, 2020—requiring plaintiff to go on administrative leave and apply for state disability.  (Id. at ¶ 17(t).)

In the year that followed, plaintiff's condition was not improving and he could not return to work because defendant refused to accommodate any light duty conditions; thus, plaintiff's doctor extended his leave three more times, with a final return date ultimately scheduled for January 30, 2021.  (Id. at ¶ 18(a)-(b).)

On June 29, 2020, while on this medical leave, plaintiff received an unexpected call from Grieling who told plaintiff, "you know you aren't coming back," so plaintiff should "make it easier" on himself by resigning because he was "up in age."  (Id. at ¶ 18(b).)  Plaintiff told Grieling he felt harassed by the comments and refused to resign.  (Id.)  On September 28, 2020, Grieling called plaintiff again and said "you should just resign, and we can get this taken care of."  (Id. at ¶ 19(a).)  Plaintiff reasserted his intent to continue working and his belief Grieling was harassing him.  (Id.)  Shortly after this call, plaintiff submitted his last extension for medical leave through January 30, 2021, when he could work without restriction.  (Id. at ¶ 19(b).)

The following day, plaintiff received another call from Grieling, who required plaintiff send him his personally identifiable health information; plaintiff responded that he would provide his return-to-work documentation only; Grieling hung up the call.  (Id. at ¶ 19(c).)  Defendant Bauer (Marten Transport's human resource senior generalist) then notified plaintiff by email he was expected to return to work on September 30, 2020.  (Id. at 19(e)-(f).)  Plaintiff called Bauer and complained of Grieling's continued targeting and ageist comments.  (Id.)  Bauer did not offer any solutions but told plaintiff to consider resigning.  (Id.)  Plaintiff then emailed Bauer his complaints and contact information for his doctor so Bauer could confirm the doctor's last medical leave extension.  (Id.)  Later that day, plaintiff received a voice mail from Grieling notifying him his position could not be held open any longer and plaintiff should re-apply after "he passes his physicals and is healthy."  (Id. at ¶ 20(a).)

On September 30, 2020, plaintiff received a call from Bauer that his medical leave extension was received, followed up by "but it would probably be easier if [you] just resigned."  (Id. at ¶ 20(b).)  Plaintiff told Bauer he did not want to resign; he also told Bauer he received a voice mail from Grieling the day before telling him his employment was terminated; Bauer ended the call without responding.  (Id.)

Plaintiff alleges that through all of this, he experienced tremendous anxiety, restlessness, depression, and sleeplessness—requiring him to take medically prescribed medications for anxiety, sleeplessness, and hypertension—all because he feared losing his job because of his age and disabilities.  (See id. at ¶19(d).)

**II.    Procedural Posture**

In April of 2021, plaintiff filed a charge of discrimination with the California Department of Fair Employment and Housing ("DFEH"), which issued a Notice of Case Closure and Right to Sue letter.  (ECF No. 24 at ¶ 25; see also ECF No. 38-1.)  On March 10, 2022, plaintiff filed a complaint in the Superior Court of California, County of Los Angeles.  (ECF No. 1.)  Defendants removed the action to federal court in the Central District of California, and later the action was transferred to this court.  (ECF Nos. 1, 63, 73.)

////

The operative First Amended Complaint ("1AC") alleges the following claims against defendant Marten Transport:  (1) discrimination on the bases of age, medical leave, and disability under California's Fair Employment and Housing Act ("FEHA"); (2) FEHA harassment on the bases of age and disability; (3) FEHA retaliation; (4) FEHA failure to provide reasonable accommodation; (5) FEHA failure to engage in the interactive process; (6) FEHA failure to prevent discrimination, harassment, and retaliation;  (7) whistleblower retaliation; (8) CFRA leave interference and retaliation; (9) breach of express oral contract not to terminate employment without good cause; (10) breach of implied-in-fact contract not to terminate without good cause; (11) negligent hiring, supervision, and retention; (12) wrongful termination of employment in violation of public policy; and (13) intentional infliction of emotional distress.  (Id.)  Plaintiff also asserts the FEHA harassment and IIED claims against defendants Grieling, Bauer, and Crandall. (ECF No. 24.)

Marten Transport now broadly moves to dismiss for plaintiff's alleged failure to exhaust his administrative remedies with the DFEH, or at minimum the claims that accrued prior to 2019. Alternatively, Marten Transport moves to dismiss the following claims:  (2) FEHA harassment; (4) FEHA failure to provide reasonable accommodation; (8) CFRA leave interference and retaliation; (9/10) breach of express oral contract and implied-in-fact contract; (11) negligent hiring, supervision, and retention; and (13) intentional infliction of emotional distress.  (ECF No. 25.)  The individual defendants also move to dismiss the FEHA harassment and IIED claims and dismiss them from the case.  (ECF Nos. 28, 29, 30.)

### III.    Legal Standard for Rule 12(b)(6) Motions to Dismiss

Rule 8(a) requires a pleading be "(1) a short and plain statement of the grounds for the court's jurisdiction . . . ; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief."  Each allegation must be simple, concise, and direct.  Rule 8(d)(1); see Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002) (overruled on other grounds) ("Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim.").

A claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted."  Rule 12(b)(6).  A complaint fails to state a claim if it either lacks a cognizable legal theory or sufficient facts to allege a cognizable legal theory.  Mollett v. Netflix, Inc., 795 F.3d 1062, 1065 (9th Cir. 2015).  To avoid dismissal for failure to state a claim, a complaint must contain more than "naked assertions," "labels and conclusions," or "a formulaic recitation of the elements of a cause of action."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007).  In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Thus, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Id.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  The court must accept the well-pleaded factual allegations as true, Erickson v. Pardus, 551 U.S. 89, 94 (2007), and construe the complaint in the light most favorable to the plaintiff, see Walter v. Drayson, 538 F.3d 1244, 1247 (9th Cir. 2008).  The court is not, however, required to accept as true "conclusory [factual] allegations that are contradicted by documents referred to in the complaint," or "legal conclusions merely because they are cast in the form of factual allegations."  Paulsen v. CNF Inc., 559 F.3d 1061, 1071 (9th Cir. 2009).

**IV.   Analysis**

 **A.   Exhaustion of DFEH Administrative Remedies**

Prior to suing under FEHA, a plaintiff must timely exhaust his administrative remedies by filing a complaint with DFEH and obtaining "a right to sue" letter.  See Romano v. Rockwell Int'l, Inc., 14 Cal. 4th 479, 492 (1996); Cal. Gov't Code § 12960(c).  Exhaustion of administrative remedies for FEHA claims is "a jurisdictional prerequisite to resort to the courts."  Wassmann v. S. Orange Cnty. Cmty. Coll. Dist., 24 Cal. App. 5th 825, 850 (2018).  "[O]rdinarily, a plaintiff cannot recover for acts occurring more than [three years] before the filing of the DFEH complaint."  Id. (quoting Jumaane v. City of Los Angeles, 241 Cal. App. 4th 1390, 1402 (2015)); Cal. Gov't Code § 12960(e) (2020) (setting three year bar to file a DFEH complaint for FEHA claims).

Here, Marten Transport argues (in its reply brief) any claims based on alleged conduct occurring prior to January 1, 2019, should be dismissed as time-barred because plaintiff did not file his complaint with the DFEH until April 19, 2021 (see ECF No. 38-1).[3]  Defendant's argument touches on plaintiff's allegations that Grieling changed plaintiff's PTO leave for CFRA leave in the summer of 2017 and made discriminatory comments about plaintiff's age and health between 2017-2018.  (See ECF No. 24 at ¶ 17(e)-(p).)  Liberally construing the allegations in the complaint, these events appear to relate (as is relevant in this exhaustion analysis) to plaintiff's claims for discrimination (id. at ¶ 29), harassment (id. at ¶ 36), retaliation (id. at ¶ 43), failure to prevent discrimination/harassment/retaliation (id. at ¶ 67), and CFRA interference and retaliation (id. at ¶ 83).  Cf., e.g., Wassmann, 24 Cal. App. 5th at 850 (noting jurisdictional prerequisite of DFEH filing for discrimination, harassment, and retaliation claims); Mora v. Chem-Tronics, Inc., 16 F. Supp. 2d 1192, 1201 (S.D. Cal. 1998) (noting a plaintiff must exhaust administrative remedies before bringing a CFRA claim "because CFRA is a part of [FEHA]") (citing Okoli v. Lockheed Technical Operations Co., 36 Cal. App. 4th 1607, 1613 (1995)); with, e.g., Ukpan v. AT&T Mobility Servs., LLC, 2020 WL 11039193, at *5 (C.D. Cal. Apr. 6, 2020) (finding the plaintiff's failure to exhaust administrative remedies for any underlying FEHA claims did not, standing alone, bar any common law wrongful termination claim) (citing Prue v. Brady Co./San Diego, 242 Cal. App. 4th at 1383 and Stevenson v. Superior Ct., 16 Cal. 4th 880, 905 (1997); Medix Ambulance Serv., Inc. v. Superior Ct., 97 Cal. App. 4th 109, 119 (2002) (declining to dismiss a IIED claim on failure-to-exhaust grounds, finding that while FEHA enshrines a policy against harassment, "a plaintiff may have a valid claim for specific tortuous conduct arising from [such] harassment").

///

---

[3] Cal. Gov't Code § 12960(e) (2020) provides a plaintiff three years to file a complaint with the DFEH.  However, this three-year limitations period went into effect on January 1, 2020 and does not "revive lapsed claims" based on actions taken prior to January 1, 2019 (respecting the statute's previous one-year limitations period).  See, e.g., McCrary v. UCLA Health, 2020 WL 2025392, at *10 (C.D. Cal. Jan. 31, 2020) (noting the legislature's explicit finding that the recent change to the limitations period did not extend already lapsed claims, and finding the plaintiff's FEHA claims based on actions that occurred prior to limitations period to be time barred).

Despite this general time bar in Section 12960, a claim based on actions that fall outside the statute of limitations may proceed under the continuing violation doctrine "if these actions are sufficiently linked to unlawful conduct that occurred within the limitations period." Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028, 1056. This requires a showing that the defendant's actions: "(1) inside and outside the limitations period are sufficiently similar in kind; (2) occurred with sufficient frequency; and (3) have not acquired a degree of permanence." Wassmann, 24 Cal. App. 5th at 850-51. "Permanence" means "an employer's statements and actions make clear to a reasonable employee that any further efforts at informal conciliation to obtain reasonable accommodation or end harassment will be futile." Yanowitz, 36 Cal. 4th at 1059 n.19 (2005). If all the elements of the continuing violation doctrine are met, the issue "should be viewed as a single, actionable course of conduct." See Harris v. City of Fresno, 625 F. Supp. 2d 983, 1023-24 (E.D. Cal. 2009) (citing Richards v. CH2M Hill, Inc., 26 Cal. 4th 798, 812 (2001)).

First, the court considers whether Grieling's comments about plaintiff's age and health between 2017-2018 are sufficiently linked to defendants' 2019 conduct, such that it is subject to the continuing violations doctrine. Plaintiff alleges it was July of 2017 when he first became aware of Grieling's alleged propensity of encouraging retirement for drivers in their sixties because they were old. (ECF No. 24 at ¶¶ 17(h)-(i).) Then, starting in September of 2018, Grieling and other defendants began expressing these very sentiments. (See Id. at ¶ 17(o)-(p) (Grieling's September 2018 call expressing concern about plaintiff's age and eyesight, asking if plaintiff had considered resigning, and telling plaintiff "you could make it easier on yourself"); ¶ 18(b) (Grieling's "unexpected" June 2020 call telling plaintiff "you know you aren't coming back" and so should "make it easier" on himself by resigning, indicating that resigning would be best for plaintiff because he was "up in age"); ¶ 19(a)-(c) (Grieling's September 2020 communications telling plaintiff "you should just resign, and we can get this taken care of", requesting plaintiff's health information, and hanging up when plaintiff refused); ¶ 20(a) (Grieling's September 29, 2020 voice mail terminating plaintiff's employment and telling him he should re-apply after "he passes his physicals and is healthy."); ¶ 20(b) (Bauer's September 30, 2020 call telling plaintiff "it would probably be easier if [plaintiff] just resigned.").

8

These allegations make clear Grieling's pre-2019 conduct is "sufficiently similar" to the alleged acts defendants took after Jan 1, 2019, and were with "sufficient frequency" given plaintiff's absence on medical leave.  Wassmann, 24 Cal. App. 5th at 850-51.  Further, it is reasonable to conclude Grieling's pre-2019 actions had not "acquired a degree of permanence" for the simple fact that he was not terminated until 2020—well within the limitations period. Yanowitz, 36 Cal. 4th at 1059 n.19; see also, e.g., Ward v. Cadbury Schweppes Bottling Grp., 2011 WL 13213886, at *8 (C.D. Cal. Nov. 2, 2011) (finding age-discriminatory acts in pre-limitations period related to post-limitations period for purposes of defendant's discriminatory animus, the cumulative effect of that animus, and defendants' credibility on their defenses). Thus, these pre-2019 acts fit the continuing violations test for purposes of exhaustion of, at minimum, plaintiff's base FEHA claims (discrimination, harassment, and retaliation).

Second, as to the issue of Grieling's change of PTO time in 2017, the court also finds this sufficiently similar to actions taken regarding plaintiff's leave time after 2019.  As alleged in the complaint, plaintiff requested three weeks of PTO starting in July of 2017 to tend to his son. (ECF No. 24 at ¶ 17(e).)  However, Grieling allegedly replaced a week of plaintiff's PTO hours with a week CFRA time, which adversely affected (among other things) plaintiff's use of CFRA time in 2019 after plaintiff tore his rotator cuff in July of 2019 and after the November 2019 surgery, (id. at ¶ 17(q), (t).)  These facts sufficiently allege similarity, and given that this loss of one week affected plaintiff each time the CFRA issue surfaced, this is sufficient frequency to link the pre- and post-exhaustion periods.  Wassmann, 24 Cal. App. 5th at 850-51.  Finally, the permanence element is satisfied as well, given that plaintiff was not terminated until 2020—while still on administrative leave.[4]  Yanowitz, 36 Cal. 4th at 1059; see also, e.g., Cross v. United Airlines, 2005 WL 8146381, at *11 (C.D. Cal. Dec. 7, 2005) (finding allegations sufficient to tie acts in pre-limitations period to post-limitations period for CFRA claim).

---

[4] The undersigned is aware that this analysis may change with discovery, particularly regarding whether Marten Transport's 2018 alteration of plaintiff's leave was sufficient to acquire a degree of permanence such that plaintiff would have been aware his rights were violated.  But the court draws reasonable inferences in plaintiff's favor here, as "[w]hether the [continuing violations] doctrine actually applies is a question that is more appropriately determined on a motion for summary judgment or at trial."  Cross, 2005 WL 8146381 at *11.

To the extent Marten Transport generally argues plaintiff's FEHA claims should be dismissed given the lack of detail in the complaint (see defendant's opening brief), the undersigned rejects this argument.  The DFEH letters demonstrate plaintiff sufficiently named defendants in his DFEH complaint and sufficiently detailed his allegations of age and disability discrimination, harassment, retaliation, and the like.  Thus, at this stage of litigation, the undersigned concludes plaintiff appropriately exhausted all administrative remedies before filing a complaint with the court.  See Yanowitz, 36 Cal. 4th at 1057 (reminding that FEHA statute of limitations should be interpreted liberally); see also Walter, 538 F.3d at 1247 (reading complaints in the light most favorable to the non-moving party); Garcia v. Los Banos Unified School Dist., 418 F. Supp. 2d 1194 (E.D. Cal. 2006) (noting FEHA provision should be for the accomplishment of the purposes thereof, including the resolution of potentially meritorious claims on the merits).

## B.      Claim 2: FEHA Harassment

Plaintiff brings a harassment claim pursuant to FEHA against all four defendants (Claim 2).  See Cal. Gov. Code § 12940(j)(1) and (j)(3) (prohibiting workplace harassment by employers on various bases, including age and disability; making employees who perpetrate harassment may be personally liable).  A complaint states a prima facie case of harassment under FEHA by alleging:  (1) membership in a protected group; (2) being subjected to harassment because of this membership; and (3) harassment "so severe that it created a hostile work environment."  Lawler v. Montblanc N. Am., LLC, 704 F.3d 1235, 1244 (9th Cir. 2013) (citing Aguilar v. Avis Rent A Car Sys., Inc., 21 Cal. 4th 121 (1999)).

"Harassment consists of conduct outside the scope of necessary job performance, conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives."  Id. at 706.  "[H]arassment includes, but is not limited to, verbal epithets or derogatory comments, physical interference with freedom of movement, derogatory posters or cartoons, and unwanted sexual advances."  Janken v. GM Hughes Elecs., 46 Cal. App. 4th 55, 63 (1996).  Typically, "commonly necessary personnel management actions such as hiring and firing, job or project assignments, office or work station assignments, promotion or demotion,

performance evaluations, the provision of support, the assignment or non-assignment of supervisory functions, deciding who will and who will not attend meetings, deciding who will be laid off, and the like, do not come within the meaning of harassment."  Id. at 64-65.  Conversely, acts of discrimination—including personnel management decisions made with discriminatory animus—can provide evidentiary support for a harassment claim.  See Roby v. McKesson Corp., 47 Cal. 4th 686, 709 (2009).  "[T]he working environment must be evaluated in light of the totality of the circumstances:  [including] frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  Miller v. Dep't of Corr., 36 Cal. 4th 446, 462 (2005).

> 1.  Defendant Grieling

The core of plaintiff's harassment claim against Grieling is that his actions were motivated by his discriminatory animus, and this should serve as evidence of harassment.  Thus, the court focuses in on the severity of the statements to determine whether such statements created a 'hostile' or 'abusive' environment to  constitute harassment.  Plaintiff alleges that, on several occasions, Grieling said to plaintiff he is "up in age," "should resign [or] consider resigning," and "know[s] [he] won't come back."  Plaintiff also alleges during such communications, Grieling would hang up the phone on him or would repeat his "you should resign" message because of his age; even though, plaintiff made it clear that he had no intentions of doing so.  (ECF No. 24 at ¶¶ 17-20.)

Reading the alleged facts in the light most favorable to plaintiff, the court observes four instances of Grieling's age- and disability-related comments over a three-year period; made right before plaintiff was due to return from each medical leave.  (ECF No. 24 at ¶¶ 17(o)-(p); 18(b); 19(a)-(c); 20(a).)  Grieling also allegedly swapped plaintiff's PTO time for CFRA time, allegedly due to discriminatory animus.  (Id. at ¶ 17(f).)  These statements and actions are not severe enough to constitute legal harassment under California law—even though the comments may have been offensive.  See, e.g., Cornell v. Berkeley Tennis Club, 18 Cal. App. 5th 908, 940 (2017) ("Four comments over several months did not establish a pattern of routine harassment

creating a hostile work environment, particularly given that the comments were not extreme"—
where defendant made multiple comments about plaintiff's weight, weight surgery, mocked and
laughed at plaintiff); see also, e.g., Saqqa v. Cty. of San Joaquin, 2022 WL 17817445, at *4-5
(9th Cir. 2022) (finding no cognizable harassment claim where plaintiff presented four age-
related comments over the course of multiple years); Arnold v. Dignity Health, 53 Cal. App. 5th
412, 428 (2020) (concluding comments made by superiors regarding employee's age—asking
plaintiff why she had not retired yet, and asking plaintiff why she was still working—were
insufficient to establish discriminatory animus supporting a discrimination claim under FEHA);
Holtzclaw v. Certainteed Corp., 795 F. Supp. 2d 996, 1014 (E.D. Cal. 2011) (holding comments
were insufficient to establish discriminatory animus, including that plaintiff should "think about
retiring," "must be getting up there [and are] old enough that [plaintiff] was thinking of
retirement," and that plaintiff "had turned fifty five (55) while on medical leave and that he was
'old enough to retire'").  Regarding plaintiff's allegations that defendant hung up the phone on
several occasions, courts have been clear that "FEHA's prohibitions are not a 'civility code' and
are not designed to rid the workplace of vulgarity."  See, e.g., Richards v. City of Citrus Heights,
2023 U.S. Dist. LEXIS 131022, at *23 (E.D. Cal. July 27, 2023) (citing Sheffield v. Los Angeles
Cnty. Dep't of Soc. Servs., 109 Cal. App. 4th 153, 161 (2003)).  While all of these actions may be
found discriminatory if based on improper motives, the remedies provided by the FEHA are those
for discrimination, not harassment.  Reno, 18 Cal. 4th at 647.

Beyond these statements, Grieling's acts appear to be in line with his duties as Marten
Transport's human resource generalist and part of human resource management.  The court finds
the remainder of these actions to be necessary personnel management actions that do not come
within the meaning of harassment.  Janken, 46 Cal. App. 4th at 65.  Thus, the 1AC fails to state a
harassment claim against Grieling.

2.  Defendant Bauer

The 1AC's facts regarding defendant Bauer's alleged harassment appear to focus on:
(1) e-mailing plaintiff about returning to work at the end of his medical leave; (2) "echoing"
Grieling's message; and (3) telling plaintiff to consider resigning because he had been on leave

for a while.  (ECF No. 24.)  However, emailing employees about their return dates is within the type of duties necessary to carry out the employer's business, as is notifying an employee that their medical leave is ending.  Janken, 46 Cal. App. 4th at 65.  Further, although plaintiff may have been offended by defendant Bauer's lack of sympathy and comments about considering resignation, such conduct does not rise to a level of hostility to constitute "harassment."  Cornell, 18 Cal. App. 5th at 940;  see also, e.g., Holtzclaw, 795 F. Supp. 2d at 1014 (reminding that comments that plaintiff should "think about retiring," "must be getting up there old enough that [plaintiff] was thinking of retirement," and that plaintiff "had turned fifty five (55) while on medical leave and that he was 'old enough to retire'" were insufficient to establish discriminatory animus).  Thus, the 1AC fails to state a harassment claim against Bauer.

### 3.  Defendant Crandall

The 1AC appears to allege harassment for Crandall because he informed plaintiff he "must work full duty, 100%, without restrictions or not work at all" constitutes harassment.  However, defendant made this statement in response to plaintiff's request to work light duty, which is a "commonly necessary personnel management action."  See, e.g., Janken, 46 Cal. App. 4th at 64-65 (reminding that necessary personnel actions job or project assignments do not come within the meaning of harassment).  While "[t]hese actions may . . . be found discriminatory if based on improper motives, . . . the remedies provided by the FEHA are those for discrimination, not harassment." Reno, 18 Cal. 4th at 646-47.  Thus, the 1AC fails to state a harassment claim against Crandall.

### 4.  Defendant Marten Transport

For the reasons that plaintiff is unable to bring a harassment claim against individual defendants, he cannot bring this claim against Marten Transport.  See, e.g., Richards, 2023 U.S. Dist. LEXIS 131022 at *25 (court dismissed plaintiff's harassment claim against defendant City, because plaintiff's harassment allegations against individual defendants were dismissed for same reasons).  Thus, the harassment claim against Marten Transport should be dismissed.

////

////

1    **C.      Claim 13: Intentional Infliction of Emotional Distress**

2            To state a cause of action for intentional infliction of emotional distress the plaintiff must

3    allege "(1) extreme and outrageous conduct by the defendant with the intention of causing, or

4    reckless disregard of the probability of causing, emotional distress; (2) [] suffering severe or

5    extreme emotional distress; and (3) actual and proximate causation of the emotional distress by

6    the defendant's outrageous conduct."  Hailey v. Cal. Physicians' Serv., 158 Cal. App. 4th 452,

7    473-74 (2007).  A defendant's conduct is "outrageous" when it is so extreme as to exceed all

8    bounds of that usually tolerated in a civilized community.  Hughes v. Pair, 46 Cal.4th 1035, 1050-

9    1051 (2009); Janken, 46 Cal. App. 4th at 61 (dismissing IIED claims for similar reasons as

10   dismissal of harassment claims, where complaint did not allege "outrageous conduct beyond the

11   bounds of human decency" because defendants' alleged policy of terminating, or forcing the

12   resignation of, employees over the age of 40 without good cause).

13           Here, plaintiff alleges he was terminated, received calls from human resources, and was

14   refused reasonable accommodations.  For the same reasons as with the court's analysis on the

15   harassment claims, personnel management not outrageous conduct beyond the bounds of human

16   decency and is insufficient to support a claim of intentional infliction of emotional distress.

17   Moreover, defendants' comments regarding plaintiff's age, health, and resignation, as mere

18   insults, indignities, threats, annoyances, petty oppressions, or other trivialities experienced in the

19   workplace are not considered outrageous conduct sufficient to successfully allege an IIED claim.

20   Janken, 46 Cal. App. 4th at 80 (finding that where plaintiff's harassment claim failed due to a

21   lack of severe conduct, IIED claim failed for similar reasons); see also, e.g., Derr v. Encore Grp.

22   USA LLC, 2023 U.S. Dist. LEXIS 132249, at *8 (C.D. Cal. June 5, 2023) (dismissing IIED claim

23   where defendant allegedly intentionally discriminated against plaintiff because of his age by

24   failing to reinstate him after the furlough period, reasoning that adverse employment decisions

25   motivated by prohibited discriminatory considerations give rise to a discrimination rather than an

26   IIED claim); Jackson v. County of Riverside, 2023 Cal. Super. LEXIS 69828, *14 (dismissing

27   IIED claim where plaintiff's allegations that defendant rearranged her assignment, changed her

28   schedule, removed her from the charge nurse assignment, asked her to perform duties outside the

14

1    normal duties of a nurse because these are all personnel management decisions); <u>Swirski v.</u>

2    <u>ProTec Bldg. Servs.</u>, 2021 U.S. Dist. LEXIS 233384, at *35 (S.D. Cal. Dec. 6, 2021) (where

3    court found defendant's comments about plaintiff's retirement or her technological proficiency

4    may have been offensive or even humiliating, but did not amount to outrageous conduct).

5         For these reasons, the 1AC fails to state a claim for intentional infliction of emotional

6    distress against any defendant, requiring dismissal.

7         **D.      Claim 4: Failure to Provide Reasonable Accommodation**

8         FEHA makes it an unlawful employment practice for an employer, because of the

9    physical disability or medical condition of any person, to discriminate against the person in

10   compensation or in terms, conditions, or privileges of employment. Cal. Gov't Code § 12940(a).

11   Under FEHA, "employees are protected from discrimination due to an actual or perceived

12   physical or mental impairment that is disabling, potentially disabling, or perceived as disabling or

13   potentially disabling." Cal. Gov't Code § 12926.1(b). To qualify as a "physical disability" under

14   FEHA, a plaintiff must plead having a "physiological disease, disorder, or condition" that affects

15   at least one specified body system and limits a major life activity. Cal. Gov't Code

16   § 12926(m)(1)(A)-(B). "The threshold question in a FEHA action is whether the plaintiff's

17   qualifying medical condition '[l]imits a major life activity.'" <u>E.E.O.C. v. UPS</u>, 424 F.3d 1060,

18   1068 (9th Cir. 2005) (quoting Cal. Gov't Code § 12926). Major life activities shall be broadly

19   construed and "include physical activities and working." Cal. Gov't Code § 12926(m)(1)(B)(iii).

20   "FEHA does not require that the disability result in utter inability or even substantial limitation on

21   the individual's ability to perform major life activities. A limitation is sufficient." <u>UPS</u>, 424 F.3d

22   at 1071.

23        An employer's "fail[ure] to make reasonable accommodation for the known physical or

24   mental disability of an applicant or employee" is an unlawful employment practice. Cal. Gov't

25   Code § 12940(m). A reasonable accommodation is any "modification or adjustment to the

26   workplace that enables the employee to perform the essential functions of the job held or

27   desired." <u>Scotch v. Art Institute of California</u>, 173 Cal. App. 4th 986, 1002-03 (2009).

28   Reasonable accommodations include "[j]ob restructuring, part-time or modified work schedules,

1   reassignment to a vacant position, … and other similar accommodations for individuals with

2   disabilities."  Id. at 1010.  Additionally, under California regulations, "[w]hen an employee can

3   work with a reasonable accommodation other than a leave of absence, an employer may not

4   require that employee to take a leave of absence."  Cal. Code Regs. tit. 2 § 11068(c).

5        An employer has an "affirmative duty" to reasonably accommodate a disabled employee.

6   Smith v. International Brotherhood of Electrical Workers, 109 Cal. App. 4th 1637, 1653 (2003).

7   The employer's duty to accommodate is a "continuing" one that is "not exhausted by one effort."

8   A.M. v. Albertsons, LLC, 178 Cal. App. 4th 455, 464–465 (2009) (citing Humphrey v. Memorial

9   Hospitals Assn., 239 F.3d 1128, 1138 (9th Cir. 2001)).  Thus, a single failure to reasonably

10  accommodate an employee may give rise to liability, despite other efforts at accommodation.  Id.

11       Here, plaintiff alleges that around July 17, 2019, he was diagnosed with a torn rotator cuff

12  and a torn bicep, and was scheduled for a surgery on November 8, 2019, by Dr. Mikalian.  (ECF

13  No. 24 at ¶q.)  Plaintiff alleges Dr. Mikalian also wrote a recommendation for defendant to place

14  plaintiff on light duty—such as "going on shorter, less strenuous routes, so as not to strain

15  shoulder so much"—before the surgery.  (Id.)  However, defendant refused to accommodate

16  plaintiff, telling him "he must work full duty and be 100% without restrictions or not work at all."

17  (Id.)  Plaintiff also alleges and implies that his doctor extended his leave on several occasions

18  because he could not return to work on light duty.  (Id. at ¶18(a).)  Taking these allegations as

19  true and drawing reasonable inferences in plaintiff's favor, the court finds plaintiff's torn rotator

20  cuff and bicep met FEHA's requirements for a physical disability that limited his major life

21  activities—ability to work.  Additionally, the court finds that based on the alleged facts and

22  inferences drawn in plaintiff's favor, the 1AC sufficiently pleads plaintiff was qualified, given

23  that he continued to work after the light work denial—and injuring himself in the process.  Thus,

24  the 1AC states a claim against Marten Transport for FEHA failure to provide reasonable

25  accommodations.  See, e.g., Tolefree v. Swift Transp. Co., 2021 U.S. Dist. LEXIS 99879, at *21-

26  22 (E.D. Cal. May 26, 2021) (finding that a claim for failure to provide reasonable

27  accommodations was adequately pleaded where pregnant female truck driver submitted a doctor's

28  note to her supervisor imposing limitations until plaintiff delivered the baby, after which plaintiff

1   got a call from a manager, who told her to turn her keys in immediately and not to work again

2   until she was "one hundred percent," without discussing whether plaintiff could continue working

3   safely); Wright v. UPS, 609 F. App'x 918, 921-22 (9th Cir. 2015) (reversing a grant of summary

4   judgment on a 'failure to provide reasonable accommodations' claim where plaintiff sufficiently

5   indicated several reasonable accommodations to the utility driver position that defendant

6   allegedly failed to provide).

7       **E.      Claim 8: CFRA Interference and Retaliation**

8           CFRA is a portion of FEHA that provides "protections to employees needing family leave

9   or medical leave." Dudley v. Dep't of Transp., 90 Cal. App. 4th 255, 260 (2001).  An employee

10  who takes CFRA leave is guaranteed that taking leave will not result in a loss of job security or in

11  other adverse employment actions.  Neisendorf v. Levi Strauss & Co., 143 Cal. App. 4th 509, 517

12  (2006).  Family leave and medical leave includes "leave because of an employee's own serious

13  health condition that makes the employee unable to perform the functions of the position of that

14  employee . . . ."  Cal. Gov. Code § 12945.2(b)(5).  ''Serious health condition" means "an illness,

15  injury, impairment, or physical or mental condition that involves either [] inpatient care in a

16  hospital, hospice, or residential health care facility; [or] continuing treatment or continuing

17  supervision by a health care provider."  Id. at subd. (b)(13); see also Dudley, 90 Cal. App. 4th at

18  260.  "The CFRA entitles eligible employees to take up to 12 weeks of unpaid medical leave

19  during a 12-month period."  Neisendorf, 143 Cal. App. 4th at 509.  "Violations of the CFRA

20  generally fall into two types of claims:  (1) 'interference' claims in which an employee alleges

21  that an employer denied or interfered with her substantive rights to protected medical leave, and

22  (2) 'retaliation' claims in which an employee alleges that she suffered an adverse employment

23  action for exercising her right to CFRA leave."   Rogers v. Cnty. of Los Angeles, 198 Cal. App.

24  4th 480, 487-488 (2011).

25          1.   CFRA Interference Claim

26          California courts have concluded that CFRA ensures protected leave only if an employee

27  returns to work on or before the expiration of the 12-week protected leave.  Id.  A CFRA

28  interference claim consists of the following elements:  (1) the employee's entitlement to CFRA

leave rights; and (2) the employer's interference with or denial of those rights.  <u>Moore v. Regents of Univ. of California</u>, 248 Cal. App. 4th 216, 250 (2016).  An employer does not interfere with a plaintiff's CFRA rights when it terminates an employee who is unable to return to work at the conclusion of the 12-week period of statutory leave.  <u>See e.g.</u>, <u>Neisendorf</u>, 143 Cal. App. 4th at 509 (no interference with CFRA rights [] when employer terminated employee who could not return for 14 weeks); <u>Rogers</u>, 198 Cal. App. 4th at 488-90 (interference claim failed as a matter of law when employee did not return to work at the conclusion of 12-week leave); <u>Rimes v. Claire's Stores, Inc.</u>, 2023 U.S. Dist. LEXIS 21652, at *30-31 (C.D. Cal. Jan. 6, 2023) (no interference with CFRA rights when employer terminated employee who not only did not return to work at the conclusion of 12-week leave, but continued to extend leave up to 8 months).

It is undisputed that plaintiff's last leave period extended well beyond CFRA's 12-week period.  In fact, plaintiff alleges his 12-week period ended on February 3, 2020, but he continued to receive medical leave extensions for additional seven months, through September 29, 2020, when he was terminated.  (ECF No. at ¶¶17(t), 19(a).).  Thus, the 1AC fails to state a claim for CFRA Leave Interference.  <u>Neisendorf</u>, 143 Cal. App. 4th at 509.

### 2.  CFRA Retaliation Claim

The elements of a cause of action for retaliation in violation of CFRA are as follows: (1) the defendant was an employer covered by CFRA; (2) the plaintiff was an employee eligible to take CFRA leave; (3) the plaintiff exercised her right to take leave for a qualifying CFRA purpose; and (4) the plaintiff suffered an adverse employment action, such as termination, fine, or suspension, because of her exercise of her right to CFRA leave.  <u>Dudley</u>, 90 Cal. App. 4th at 261.

Here, the first three elements are not challenged by either side; however, defendants argue plaintiff was terminated simply because his leave extended well beyond 12 weeks, as discussed above.  Many courts have stated that such temporal distance, without more, is too remote to plead CFRA retaliation.  <u>See, e.g.</u>, <u>Swan v. Bank of Am.</u>, 360 Fed. Appx. 903, 906 (9th Cir. 2009) (Defendant "terminated [the plaintiff] four months after her return from [FMLA] leave, which is too remote in time to support a finding of causation premised solely on temporal proximity.").  Conversely, in <u>Dudley</u>, the court found that plaintiff's allegations were sufficient to constitute a

cause of action for retaliation in violation of the CFRA, despite the fact that the employee likely exhausted her CFRA leave by the time the employer terminated her employment.  Dudley, 90 Cal. App. 4th at 261.  There, plaintiff alleged "she was criticized, subjected to leave control, and was 'required to account for each and every day of her illness in a manner which was not required of other employees' because she took leaves of absences to address her health problems.  Id. Furthermore, the Dudley employee alleged that following two other leaves of absences to control her medical condition, she was served with notices of adverse action which resulted in a salary reduction and 10-day suspension.  Id.

Here, in evaluating the alleged facts in the light most favorable to the plaintiff, the court finds the 1AC alleges enough to state a claim for retaliation under CFRA.  After all, the core of plaintiff's allegations here is that defendants started to take adverse actions motivated by discriminative animus against him every time he took leave from work.  This includes allegations Grieling previously replaced his PTO with CFRA hours—which later shortened one of his CFRA leaves.  This also includes defendants' making multiple calls to plaintiff commenting on his age and disabilities, inquiring about his personal medical records, denying him a light work accommodation, continuing to suggest he resign, and—following one of his CFRA leaves— moving back his employment anniversary date by three months.  (See ECF No. 24 at ¶¶ 17-19.) These facts allege more than mere passage of time and, at this stage of litigation, are more akin to Dudley, 90 Cal. App. 4th at  264-65.  Thus, the 1AC sufficiently pleads a claim for CFRA leave retaliation against Marten Transport.

### F.      Claims 9 and 10: Breach of Contract

California Labor Code § 2922 provides:  "[a]n employment, having no specified term, may be terminated at the will [] of either party on notice to the other."  Cal. Labor Code § 2922. At-will employment is terminable at any time without cause and is not subject to any procedural requirements except statutory notice.  Guz v. Bechtel Nat'l, Inc., 24 Cal. 4th 317, 335 (2000). While the statutory presumption of at-will employment is strong, it may be rebutted by evidence of the parties' contrary intent.  Id. at 336.  This includes evidence of an express contract "limiting the employer's right to discharge the employee."  Foley v. Interactive Data Corp., 47 Cal. 3d 655

(1988).  It also includes evidence of an implied-in-fact contract arising from conduct that shows a mutual intent to limit the at-will doctrine.  Guz, 24 Cal. 4th at 336.

To state a claim for breach of contract, a plaintiff must allege sufficient facts to establish: (1) A contract between the parties; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff from the breach.  Wall Street Network, Ltd. v. New York Times Co., 164 Cal. App. 4th 1171, 1178 (2008).  A contract must be pleaded verbatim in the body of the complaint, be attached to the complaint and incorporated by reference, or be pleaded according to its legal effect, i.e. the substance of its relevant terms. Bowden v. Robinson, 67 Cal. App. 3d 705, 718 (1977); see also Heritage Pacific Financial, LLC v. Monroy, 215 Cal. App. 4th 972, 993 (2013) (This is more difficult, for it requires a careful analysis of the instrument, comprehensiveness in statement, and avoidance of legal conclusions.")

### 1.  Breach of Express Oral Contract

The 1AC generally alleges there was an express oral agreement and oral assurances that he would not be terminated except for good cause.  (ECF No. 24 at ¶¶ 89-92.)  It also alleges (under the implied contract claim) Marten Transport, through its agents, "entered an express oral agreement not to terminate plaintiff's employment except for good cause" by "represent[ing] to plaintiff that his employment would not be terminated unless his job performance were unsatisfactory contract supports his express oral contract claim.  (Id. at ¶ 95.)  This does not provide sufficient detail to state a claim, as plaintiff must allege explicit words and terms of this supposed oral agreement.  See, e.g., Tran v. Crane Co., 2021 Cal. Super. LEXIS 55461, *7 (court did not recognize a claim for express oral contract where plaintiff simply pleaded there was an express oral agreement not to terminate plaintiff's employment except for good cause); Heritage Pacific Financial, 215 Cal. App. 4th at 993 (finding no express oral contract where allegations were only that the parties "entered into an express oral agreement not to terminate plaintiff's employment except for good cause"); Foley, 47 Cal. 3d at 675 ("Although plaintiff describes his cause of action as one for breach of an oral contract, he does not allege explicit words by which the parties agreed he would not be terminated without good cause.").

////

1

   2. <u>Breach of Implied Contract</u>

2        Plaintiff bears the burden of pleading facts sufficient to overcome the presumption of at-

3   will employment, namely that plaintiff entered into an implied contract he would only be

4   terminated for good cause.  <u>See</u> <u>Jacobson v. Carlton Hair</u>, 2011 U.S. Dist. LEXIS 165587, at *19-

5   20 (C.D. Cal. Jan. 31, 2011) (citing <u>Foley</u>, 47 Cal. 3d at 682).  In <u>Foley</u>, the California Supreme

6   Court identified several factors relevant in determining whether an implied agreement limiting the

7   employer's right to terminate an employee exists.  These include "the personnel policies or

8   practices of the employer, the employee's longevity of service, [] actions or communications by

9   the employer reflecting assurances of continued employment, and the practices of the industry in

10  which the employee is engaged." <u>Foley</u>, 47 Cal.3d at 680.  "[T]he totality of the circumstances

11  determines the nature of the contract," and "the acts and conduct of the parties [should be]

12  interpreted in the light of the subject matter and of the surrounding circumstances." <u>Id.</u> at 681.

13  The existence of an implied contract to discharge an employee only for good cause is normally a

14  question of fact.  <u>See</u> <u>Alexander v. Nextel Commc'ns, Inc.</u>, 52 Cal. App. 4th 1376, 1381 (1997).

15       Here, the 1AC raises issues better suited to evidentiary scrutiny.  Particularly, plaintiff

16  alleges Marten Transport's actual practice, as well as the industry standard, is to terminate

17  employment only for good cause.  (ECF No. 24 at ¶ 94.)  Additionally, plaintiff alleges he

18  worked for Marten Transport for 12 years, during which time he was presented with multiple

19  awards and recognitions, and was at the top tier of defendant's driver performance point system,

20  and had only two past disciplinary incidences.[5]  (<u>Id.</u> at ¶¶15(a)-(h); ¶¶ 17(a),(c).)  Evaluating the

21  totality of the circumstances in the light most favorable to the plaintiff, the 1AC plausibly states a

22  claim for breach of implied contract against Marten Transport.  <u>See, e.g.</u>, <u>Lewis v. Dow Chem.</u>

23  <u>Corp.</u>, 2018 U.S. Dist. LEXIS 84229, at *21 (N.D. Cal. May 17, 2018) (finding sufficient issues

24  on breach of an implied contract where plaintiff maintained his longevity of service, pointed to

25
26
27
28

[5] Plaintiff also alleges he entered into an oral agreement with Marten Transport and received oral assurances that he would not be terminated except for good cause.  Given that the undersigned found this too conclusory for plaintiff to state an express oral contract claim, this allegation is not relied upon in the implied contract analysis.  However, given that an implied contract looks at the totality of the circumstances, the conclusory statement is no bar to the implied contract claim (and discovery may reveal facts about this alleged express oral contract supporting the implied claim).

21

1    satisfactory performance reviews, and showed evidence that employee terminations were

2    preceded standard process in the industry).

3        **G.    Claim 11: Negligent Hiring, Supervision, and Retention**

4            In California, "[a]n employer can be liable [] to a third person for negligently hiring,

5    supervising, or retaining an unfit employee." Alexander v. Cmty. Hosp. of Long Beach, 46 Cal.

6    App. 5th 238, 264 (2020) (internal quotation marks omitted).  This liability "is based upon the

7    facts that the employer knew or should have known that hiring [or retaining] the employee

8    created a particular risk or hazard and that particular harm materializes." Doe v. Cap. Cities, 50

9    Cal. App. 4th 1038, 1054 (1996).  Accordingly, to establish liability for negligent hiring or

10   supervision, a plaintiff must show "the employer knew or should have known that hiring [or

11   retaining] the employee created a particular risk or hazard and that particular harm materializes."

12   Id.  In determining the extent of a party's 'knowledge', plaintiff may allege such facts generally,

13   and courts must accept as true all material allegations in the complaint, as well as reasonable

14   inferences to be drawn from them.  See Holden, 978 F.2d at 1118; see also, e.g., Farias v.

15   AMTRAK, 2015 U.S. Dist. LEXIS 105488, at *19 (C.D. Cal. Aug. 11, 2015) (reasoning that

16   'knowledge' may be averred generally where pleadings allege sufficient underlying facts from

17   which a court may reasonably infer that a party acted with the requisite state of mind).

18           Here, the 1AC alleges facts from which the court can reasonably infer Marten Transport

19   should have known its employees—particularly Grieling—had a propensity to discriminate

20   against Marten Transport employees because of their age.  Plaintiff alleges Grieling had

21   reputation for telling employees in their 60s they were old and encouraged them to retire.  (ECF

22   No. 24 at 12.)  Plaintiff also alleges (unaddressed in the briefing) he complained to senior HR

23   generalist Ann Bauer that he felt targeted by Grieling because of his age, relaying Grieling's

24   statements to her.  (Id. at 13-15.)  Thus, in the light most favorable to plaintiff and drawing all

25   reasonable inferences in favor of non-moving party, court finds plaintiff has pleaded enough to

26   state a claim for negligent hiring, supervision and retention.  Doe, 50 Cal. App. 4th at 1054.

27   ////

28   ////

1    **V.      Conclusion**

2         In sum, the undersigned finds the 1AC adequately pleads claims against Marten Transport

3    for:  failure to provide reasonable accommodations under FEHA (Claim 4); CFRA leave

4    retaliation (Claim 8); breach of an implied-in-fact contract (Claim 10), and negligent hiring,

5    supervision, and retention (Claim 11).  These claims, alongside plaintiff's unchallenged claims

6    for discrimination (Claim 1), retaliation (Claim 3), failure to engage in the interactive process

7    (Claim 5), failure to prevent <u>discrimination and retaliation</u> (Claim 6), whistleblower retaliation

8    (Claim 7), and <u>Tameny</u> wrongful termination (Claim 12) should proceed to discovery.

9         However, the undersigned finds the 1AC fails to state a claim against Marten Transport

10   for harassment (Claim 2) (and associated '<u>failure to prevent harassment'</u> in Claim 6), CFRA leave

11   interference (contained in Claim 8), breach of express oral contract (Claim 9), and intentional

12   infliction of emotional distress (Claim 13).  Thus, these claims should be dismissed.  The 1AC

13   also fails to state a claim against defendants Grieling, Crandall, and Bauer for harassment (Claim

14   2) and intentional infliction of emotional distress (Claim 13), and so these claims should be

15   dismissed.

16        Leave to amend should be granted "freely" when justice so requires.  Fed. R. Civ. P.

17   15(a).  The Ninth Circuit maintains a policy of "extreme liberality generally in favoring

18   amendments to pleadings."  <u>Rosenberg Bros. & Co. v. Arnold</u>, 283 F.2d 406, 406 (9th Cir. 1960).

19   Reasons "such as undue delay, bad faith or dilatory motive . . . repeated failure to cure

20   deficiencies . . . undue prejudice to the opposing party . . . [or] futility" may support denial of

21   leave to amend.  <u>Foman v. Davis</u>, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962).  A

22   district court "should grant leave to amend even if no request to amend the pleading was made,

23   unless it determines that the pleading could not possibly be cured by the allegation of other facts."

24   <u>Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Servs.</u>, 911 F.2d 242, 247 (9th Cir. 1990).

25        Here, the court finds leave to amend would be futile on plaintiff's CFRA interference

26   claim (Claim 7) because plaintiff's alleged timeline makes it clear there is no such claim as a

27   matter of law.  <u>See, e.g.</u>, <u>Neisendorf</u>, 143 Cal. App. 4th at 509; <u>Rogers</u>, 198 Cal. App. 4th at 488-

28   90; <u>Rimes</u>, 2023 U.S. Dist. LEXIS 21652 at *30-31.  However, because the court cannot conclude

it would be futile to allow plaintiff the opportunity to allege additional facts to revive the remaining dismissed claims, the undersigned recommends plaintiff be afforded the opportunity to amend his claims for FEHA harassment (Claim 2), breach of express oral contract (Claim 9), and intentional infliction of emotional distress (Claim 13).

Plaintiff is cautioned that, should he choose to amend on these claims, he shall consider the authorities cited herein and provide additional facts, subject to Rule 11, that meet the standard for severe harassment (See, e.g., Cornell, 18 Cal. App. 5th at 940; Saqqa, 2022 WL 17817445 at *4-5); Arnold, 53 Cal. App. 5th at 428; Holtzclaw, 795 F. Supp. 2d at 1014), outrageous conduct beyond the bounds of human decency (Janken, 46 Cal. App. 4th at 80), or explicit words and terms of this any express oral agreement (See, e.g., Foley, 47 Cal. 3d at 675; Tran, 2021 Cal. Super. LEXIS 55461 at *7 Heritage Pacific Financial, 215 Cal. App. 4th at 993). If plaintiff wishes to amend these claims, he shall state as much in his objections to these findings and recommendations and state the additional facts he intends to rely on—so that the district judge can make a final determination regarding amendment of these claims. Alternatively, plaintiff may inform the district judge in the objections that he is electing to forgo any further amendment so that he can move forward with his other claims. In the latter case, the undersigned would recommend the court dismiss the individual defendants from this case.

## **RECOMMENDATIONS**

Accordingly, it is HEREBY RECOMMENDED that:

1. Defendants' motions to dismiss (ECF Nos. 25, 28, 29, 30) should be GRANTED in part and DENIED in part as follows:

    a. Plaintiff's claim of CFRA leave interference (claim 7) should be dismissed without leave to amend;

    b. Plaintiff's claims of FEHA harassment (claim 2), breach of express oral contract (claim 9), and intentional infliction of emotional distress (claim 13) should be dismissed for failure to state a claim, with the option for plaintiff to amend if additional facts exist;

    c. Marten Transport's motion to dismiss plaintiff's claims of failure to provide

24

reasonable accommodations under FEHA (Claim 4); CFRA leave retaliation (Claim 8); breach of an implied-in-fact contract (Claim 10), and negligent hiring, supervision, and retention (Claim 11) should be denied; and

2.  Within 21 days from the date of entry of the district judge's order on these findings and recommendations, plaintiff should be allowed to either:  (a) file either a second amended complaint or (b) a notice of his intent not to amend further and proceed only on the claims found cognizable.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served on all parties and filed with the court within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

Dated:  December 20, 2023

_Kendall J. Newman_

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

SD/AZ, ques.311