Carney R. Shegerian, Esq., State Bar No. 150461
CShegerian@Shegerianlaw.com
Anthony Nguyen, Esq., State Bar No. 259154
ANguyen@Shegerianlaw.com
Mahru Madjidi, Esq., State Bar No. 297906
MMadjidi@Shegerianlaw.com
Nicole L. Gilanians, Esq., State Bar No. 346710
NGilanains@Shegerianlaw.com
SHEGERIAN & ASSOCIATES, INC.
11520 San Vicente Boulevard
Los Angeles, California 90049
Telephone Number:  (310) 860-0770
Facsimile Number:   (310) 860-0771

Attorneys for Plaintiff,
RAMON QUESADA

# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAMON QUESADA,<br><br>       Plaintiff,<br><br>vs.<br><br>MARTEN TRANSPORT, LTD, MARTEN TRANSPORT, MARTEN TRANSPORT SERVICES, LTD, ANN BAUER, TABITHA CRANDALL, JEFFREY GREILING, and DOES 1 to 100, inclusive,<br><br>      Defendants. | Case No.:  2:23-cv-00311-DAD-KJN<br><br>**The Honorable Dale A. Drozd**<br><br>**PLAINTIFF RAMON QUESADA'S SECOND AMENDED COMPLAINT FOR DAMAGES FOR:**<br><br>**(1) DISCRIMINATION ON THE BASES OF AGE, MEDICAL LEAVE, AND DISABILITY IN VIOLATION OF THE FAIR EMPLOYMENT AND HOUSING ACT ("FEHA") (Government Code § 12900);**<br><br>**(2) HARASSMENT ON THE BASES OF AGE AND DISABILITY IN VIOLATION OF FEHA;**<br><br>**(3) RETALIATION IN VIOLATION OF FEHA;**<br><br>**(4) FAILURE TO PROVIDE REASONABLE ACCOMMODATION IN VIOLATION OF FEHA;**<br><br>**(5) FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS IN VIOLATION OF FEHA;** |

(6) **FAILURE TO PREVENT DISCRIMINATION, HARASSMENT, AND RETALIATION;**

(7) **WHISTLE-BLOWER RETALIATION IN VIOLATION OF LABOR CODE § 1102.5, ET SEQ.**

(8) **CFRA LEAVE RETALIATION IN VIOLATION OF GOVERNMENT CODE §12900, et seq.**

(9) **BREACH OF IMPLIED-IN-FACT CONTRACT NOT TO TERMINATE EMPLOYMENT WITHOUT GOOD CAUSE;**

(10) **NEGLIGENT HIRING, SUPERVISION, AND RETENTION;**

(11) **WRONGFUL TERMINATION OF EMPLOYMENT IN VIOLATION OF PUBLIC POLICY;**

(12) **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;**

**DEMAND FOR JURY TRIAL**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................ 1

JURISDICTION AND VENUE ...................................................... 1

PARTIES.......................................................................................... 2

FACTUAL ALLEGATIONS ........................................................... 4

EXHAUSTION OF ADMINISTRATIVE REMEDIES .................. 12

FIRST CAUSE OF ACTION .......................................................... 12

    (Discrimination on the Bases of Age, Medical Leave, and Disability (Government Code § 12900, *et seq.*)—Against Entity Defendants and Does 1 to 100, Inclusive) ........................................................................ 12

SECOND CAUSE OF ACTION ..................................................... 14

    (Harassment on the Bases of Age and Disability (Government Code § 12900, *et seq.*)—Against All Defendants and Does 1 to 100, Inclusive)............................ 14

THIRD CAUSE OF ACTION ......................................................... 15

    (Retaliation for the Exercise of Rights Guaranteed Under FEHA, *e.g.,* Participating in Protected Activities and Opposing Defendants' Failure to Provide Such Rights (Government Code § 12900, *et seq.*)—Against Entity Defendants and Does 1 to 100, Inclusive) ........................................................ 15

FOURTH CAUSE OF ACTION ...................................................... 17

    (Failure to Provide Reasonable Accommodation (Government Code § 12940(a), (i), (m), (n))—Against Entity Defendants and Does 1 to 100, Inclusive) ........................................................................ 17

FIFTH CAUSE OF ACTION .......................................................... 18

    (Failure to Engage in the Interactive Process (Government Code § 12940(a)—Against Entity Defendants and Does 1 to 100, Inclusive) ........................ 18

SIXTH CAUSE OF ACTION .......................................................... 19

    (Failure to Prevent Discrimination, Harassment, and Retaliation (Government Code § 12900, *et seq.*)—Against Entity Defendants and Does 1 to 100, Inclusive) ........................................................................ 19

SEVENTH CAUSE OF ACTION .................................................... 20

    (Whistle-Blower Retaliation (Labor Code § 1102.5, *et seq.*)—Against Entity Defendants and Does 1 to 100, Inclusive)............................................ 20

EIGHTH CAUSE OF ACTION ....................................................... 22

(CFRA Leave Retaliation (Government Code § 12900, *et seq.*)—Against Entity Defendants and Does 1 to 100, Inclusive) ........................................ 22

NINTH CAUSE OF ACTION ........................................................................ 23

(Breach of Implied-in-Fact Contract Not to Terminate Employment Without Good Cause (*Marketing West, Inc. v. Sanyo Fisher* (1992) 6 Cal.App.4th 603; Civil Code § 1622)—Against Entity Defendants and Does 1 to 100, Inclusive) ..... 23

TENTH CAUSE OF ACTION ........................................................................ 24

(Negligent Hiring, Supervision, and Retention (*Doe v. Capital Cities* (1996) 50 Cal.App.4th 1038)—Against Entity Defendants and Does 1 to 100, Inclusive) ........................................................................ 24

ELEVENTH CAUSE OF ACTION ................................................................. 25

(Wrongful Termination of Employment in Violation of Public Policy (*Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167)—Against Entity Defendants and Does 1 to 100, Inclusive) ........................................ 25

TWELFTH CAUSE OF ACTION ................................................................... 26

(Intentional Infliction of Emotional Distress (*Hughes v. Pair* (2009) 46 Cal.4th 1035)—Against All Defendants and Does 1 to 100, Inclusive) .......... 26

PRAYER FOR RELIEF ................................................................................ 26

DEMAND FOR JURY TRIAL ...................................................................... 27

PLAINTIFF'S SECOND AMENDED COMPLAINT FOR DAMAGES

# TABLE OF AUTHORITIES

**Page**

## Cases

*Brown v. Superior Court* (1984) 37 Cal.3d 477 ............................................. 2

*Doe v. Capital Cities* (1996) 50 Cal.App.4th 1038 ...................................... 22

*Hughes v. Pair* (2009) 46 Cal.4th 1035 ......................................................... 24

*Marketing West, Inc. v. Sanyo Fisher* (1992) 6 Cal.App.4th 603 ............... 21

*Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167 .............................. 23

## Statutes

29 Code of Federal Regulations § 825 ............................................................. 6

Civil Code § 1622 ............................................................................................ 21

Civil Code § 3294 .................................................................................. 1, 8, 9, 24

Code of Civil Procedure § 474 .......................................................................... 3

Code of Civil Procedure § 1021.5 ................................................................ 1, 24

Code of Civil Procedure § 1032 ...................................................................... 24

Code of Civil Procedure § 3291 ........................................................................ 1

Government Code §§ 12900-12996 ........................................................... passim

Government Code § 12945.1-12945.2 ........................................................ passim

Government Code § 72055 ............................................................................... 25

Labor Code § 232.5 .................................................................................... 18, 23

Labor Code § 1102.5 ................................................................................... passim

# INTRODUCTION

1.  Defendants Marten Transport, LTD, Marten Transport, Marten Transport Services, LTD, Ann Bauer, Tabitha Crandall, and Jeffrey Grieling (collectively referred to as "Defendants") discriminated against, harassed, refused to accommodate, retaliated against, and wrongfully terminated the employment of plaintiff, Ramon Quesada ("Plaintiff" or "Quesada"), because of his age, race, disabilities/medical condition, and requests for reasonable accommodations.

2.  Quesada brings this action against Defendants for economic, non-economic, compensatory, and punitive damages pursuant to Civil Code section 3294, pre-judgment interest pursuant to Code of Civil Procedure section 3291, and costs and reasonable attorneys' fees pursuant to Government Code section 12965(b), Code of Civil Procedure section 1021.5, and Labor Code section 1102.5(j).

# JURISDICTION AND VENUE

3.  The actions at issue in this case occurred in the State of California, the State of Wisconsin, and the State of Arizona.  Under the California Fair Employment and Housing Act, this case can alternatively, at plaintiff's choice, be filed:

> *[I]n any county in the state in which the unlawful practice is alleged to have been committed* . . . or *in the county in which the aggrieved person would have worked or would have had access to the public accommodation but for the alleged unlawful practice,* but if the defendant is not found within any of these counties, an action may be brought within the county of the defendant's residence or principal office . . .

California Government Code § 12965(b) (emphasis added).

4.  Plaintiff Quesada worked out of Defendant's Intermodal Drop Yard in Stockton, California, where he routinely picked up loaded refrigerated trailers and delivered them to customers at various locations in and around California, including Lathrop, Fresno, and Ontario. Plaintiff also made two trips to Mondovi, Wisconsin during his employment with Entity Defendants as well. Once for an award ceremony and once to return a malfunctioning truck.

---

5.  In addition to commercial driving, drop-offs, and pickups, plaintiff's work included completing required paperwork, communicating with Defendants regarding business, and communicating with Defendants' clients regarding business.  Plaintiff worked, and would have continued to work, but for Defendants' unlawful practices, namely, their discrimination, retaliation, and related illegal actions.

6.  The FEHA special venue statute—section 12965(b)—affords a wide choice of venue to persons who bring actions under FEHA.  *Brown v. Superior Court* (1984) 37 Cal.3d 477, 486.  "[T]he special provisions of the FEHA venue statute control in cases involving FEHA claims joined with non-FEHA claims arising from the same facts," including the instant action.  *Id.* at 487

## PARTIES

7.  *Plaintiff:*  Plaintiff Quesada is, and at all times mentioned in this Second Amended Complaint, a resident of Stockton, California.

8.  *Defendants:*  Defendants Marten Transport, LTD, Marten Transport, Marten Transport Services, LTD (collectively "Entity Defendants") are, and at all times mentioned in this Second Amended Complaint headquartered in Mondovi, Wisconsin, and authorized and qualified to do business in the State of California, the State of Wisconsin, and the State of Arizona.  The following causes of action took place in the State of California, the State of Wisconsin, and the State of Arizona. At all times mentioned in this Second Amended Complaint, Entity Defendants employed individual defendants (collectively "Individual Defendants") Tabitha Crandall ("Crandall") as a Dispatcher in, Mondovi, Wisconsin, Ann Bauer ("Bauer") as a Human Resource Senior Generalist in Mondovi, Wisconsin, and Jeffrey Grieling ("Grieling") as a Society for Human Resource Management–Certified Professional in Phoenix, Arizona.

9.  *Doe defendants:*  Defendants Does 1 to 100, inclusive, are sued under fictitious names pursuant to Code of Civil Procedure section 474.  Plaintiff is informed and believes, and on that basis alleges, that each of the defendants sued under fictitious names is in some

manner responsible for the wrongs and damages alleged below, in so acting was functioning as the agent, servant, partner, and employee of the co-defendants, and in taking the actions mentioned below was acting within the course and scope of his or her authority as such agent, servant, partner, and employee, with the permission and consent of the co-defendants. The named defendants and Doe defendants are sometimes hereafter referred to, collectively and/or individually, as "defendants."

10.   *Relationship of defendants:*   All defendants compelled, coerced, aided, and/or abetted the discrimination, retaliation, and harassment alleged in this Complaint, which conduct is prohibited under California Government Code section 12940(i).  All defendants were responsible for the events and damages alleged herein, including on the following bases:  (a) defendants committed the acts alleged; (b) at all relevant times, one or more of the defendants was the agent or employee, and/or acted under the control or supervision, of one or more of the remaining defendants and, in committing the acts alleged, acted within the course and scope of such agency and employment and/or is or are otherwise liable for plaintiff's damages; (c) at all relevant times, there existed a unity of ownership and interest between or among two or more of the defendants such that any individuality and separateness between or among those defendants has ceased, and defendants are the alter egos of one another.  Defendants exercised domination and control over one another to such an extent that any individuality or separateness of defendants does not, and at all times herein mentioned did not, exist.  Adherence to the fiction of the separate existence of defendants would permit abuse of the corporate privilege and would sanction fraud and promote injustice.  All actions of all defendants were taken by employees, supervisors, executives, officers, and directors during employment with all defendants, were taken on behalf of all defendants, and were engaged in, authorized, ratified, and approved of by all other defendants.

11.   Defendants Marten Transport, LTD, Marten Transport and Marten Transport Services, LTD, indirectly employed plaintiff Quesada, as defined in the Fair Employment and Housing Act ("FEHA"), at Government Code section 12926(d).

12.   In addition, Entity Defendants and Individual Defendants compelled, coerced, aided, and abetted the discrimination, which is prohibited under California Government Code section 12940(i).

13.   Finally, at all relevant times mentioned herein, all defendants acted as agents of all other defendants in committing the acts alleged herein.

## FACTUAL ALLEGATIONS

14.   *Plaintiff's hiring and employment:*

a.   Ramon "Ray" Quesada ("Quesada") was hired by Entity Defendants on or around May 22, 2008 for the position of Local Driver, in Stockton, California.

15.   *Plaintiff's job performance*

a.   Quesada loved being a Local Driver for Entity Defendants. Quesada remained in the top tier of Entity Defendants' driver performance point system throughout his 12 years of employment. Entity Defendants acknowledged Quesada as an exceptional employee on several special occasions.

b.   On or around June 3, 2009, Entity Defendants' awarded Quesada a safety Award for 1 year of safe driving.

c.   On or around September 12, 2009, Safety Manager, Lori Kelly Ott, and Senior Compliance Specialist, Brandon Burr, presented Quesada with Entity Defendants' Marten Blue Bird pin award for passing an inspection from the State of California.

d.   Entity Defendants' awarded Quesada a Marten Blue Bird pin

e.   On or around February, 2009, Entity Defendants' awarded Quesada the Driver of the Month Award.

f.   On or Around April 30, 2010, Safety Manager, Lori Kelly Ott presented Quesada with Entity Defendants' Marten Blue Bird pin award for passing an inspection from the State of California.

g.   On or around June 7, 2010, Entity Defendants' awarded Quesada a safety Award for 2 years of safe driving.

h.   On or around April 7, 2018, Entity Defendants' presented Quesada with the Bronze Medallion Club Award for his commitment to safe driving.

i.   On or around May 22, 2018, Entity Defendants' presented Quesada with the 10 Years of Service Award.

16.   *Plaintiff's protected status and activity:*

a.   Quesada was over the age of forty;

b.   Quesada was Hispanic;

c.   Quesada suffered an ischemic stroke in or around July 17, 2018.

d.   Quesada  suffered a rotator cuff injury in or around July 18, 2019.

17.   *Quesada is subjected to discrimination:*

a.   In or around June of 2016, Quesada was backing up a delivery truck into a driveway at Entity Defendant's Stockton location and bumped into a yellow bollard hidden behind overgrown shrubbery. Entity Defendants' Safety Department, which was located in Wisconsin, issued Quesada a write-up for the event. Quesada had a perfect 25-point score on Entity Defendant's driver performance point system before this incident and continued to have a near perfect score after this incident.

b.   In or around February of 2017, Quesada, who had previously reported to Entity Defendants' safety department that the delivery truck assigned to him had a malfunctioning speedometer, was still driving it despite its need for repair. Quesada started using a radar detector to make the delivery truck safer, which alerted him when Entity Defendants' delivery truck began to approach an unsafe speed. During a stop at the Cajon Junction Weigh Station, a California Highway Patrol Officer gave Quesada a warning to ensure his radar detector would not obstruct his windshield view.

c.   Quesada subsequently received a personal note in the mail a few days later from the President of Entity Defendants, Randy Marten. The note read, "Ramon, really, a radar detector?" The next day Quesada's dispatcher, Crandall, called Quesada from Mondovi, Wisconsin.  Crandall told Quesada that because of what had occurred at the Cajon Junction Weigh Station, he had been placed on a 9-month probation and any

incident forward would be grounds for termination. The thought of losing his job if he made any mistakes in the next nine months scared Quesada and he began to worry nonstop.

     d.  Quesada was subsequently assigned a non-malfunctioning delivery truck, but when he told his fellow drivers at the Los Angeles Terminal about the ultimatum he was issued by Entity Defendants for bumping into a bollard and for receiving a warning from a California Highway Patrol Officer, they were shocked and in disbelief. Apparently, there were many instances where Caucasian drivers for Entity Defendants caused major damages and received no disciplinary action. Quesada felt like he was being treated differently and starting to worry even more about making a mistake and losing his job.

     e.  On or around July 17, 2017, Quesada's son was caught in a very severe roll-over car accident where he sustained severe trauma injuries and permanently lost the use of his right arm.  Quesada had three weeks of paid time off ("PTO") accrued and requested three weeks of PTO, which Crandall approved.

     f.  Greiling, learned that Quesada was attending to his son's needs during his time off and replaced a week of Quesada's three weeks of PTO with "leave entitlement" time off reserved for FMLA/CFRA requests.

     g.  Under Entity Defendants' policy, Greiling's intentional actions triggered a "rolling" 12-month period, which limited the future number of days available to Quesada for FMLA, and measured backwards from, July 17, 2017.

     h.  Quesada found Greiling's actions odd and began to ask other drivers he worked with about Greiling's reputation.

     i.  When Quesada told his wife, Connie Quesada ("Ms. Quesada"), about Greiling's reputation, she reminded him to stay positive. As she was confident Quesada would keep his job, given his excellent performance and the various awards he received.

     j.  On or around July 17, 2018,  Quesada had an ischemic stroke when a retinal vein in the back of his eye burst and caused him to go partially blind.  Quesada, who had just finished work at Entity Defendants' Train Yard in Stockton, was able to call Ms. Quesada. She picked Quesada up and drove him to the emergency room at the nearest

hospital.

k.    Quesada's emergency physician sent Quesada to an ophthalmologist, Dr. Rydui, MD., from Retinal Consultants, who put Quesada on medical leave until October 27, 2018. At that time, neither Crandall nor Grieling expressed any issues with the duration of Quesada's leave or his injury.

l.    On or around August 20, 2018, Entity Defendants' mailed Quesada a letter. The letter explained that Quesada's group health plan allowed only "12 weeks of inactive status" (i.e., disability leave, medical leave, FMLA) per each 12-month rolling period.  It further claimed that the days of PTO that Quesada took off on or around July 17, 2017 was medical leave rather than PTO and as such, Quesada's benefits during his 12 weeks of medical leave would end on September 16, 2018, instead of October 27, 2018.

m.    Quesada contacted Entity Defendants' Benefit Administrator in Wisconsin, Pamela Polfliet ("Polfliet"), and expressed shock and alarm over having not been notified about the policy outlined in the letter he received when he started his medical leave, including the impending monthly COBRA premium of more than one thousand dollars. Polfliet responded that defendants would reinstate his benefits and old insurance once he paid the premium and returned to work and noted to Quesada that his employment anniversary date was being moved forward from May 22 to August 22 due to the 3 month leave he took.

n.    On or around early September of 2018, just two days before Quesada was supposed to return to work, he received his first of what would be many out of the ordinary phone calls from Grieling to Quesada, but that he had become far too familiar with through Grieling's representation.

o.    During the call Grieling said he was concerned about Quesada because of his age and eyesight and asked Quesada if he thought about resigning instead of returning to work. Quesada assured Grieling he would not need accommodations and that his eyesight would be fine.

p.    During the phone call, Greiling suggested to Quesada that he could

alternatively, just resign and reapply as a new hire when he felt better. Quesada assured Grieling he loved his job and after Quesada finished talking, Quesada flatly stated, "You could make it easier on yourself," and ended the conversation. Because Greiling made Quesada feel like he was walking on eggshells, he returned to work before the return date of his medical leave.

q.   Grieling's outrageous and discriminatory comments regarding Quesada's age and medical disabilities created immense fear and stress for him.

r.   Further contributing to his immense fear and stress, in or around mid-late 2019 through to his termination, Quesada was repeatedly told by his coworkers that Grieling had a reputation for telling Entity Defendants' employees who were in their 60s that they were old and encouraged them to retire. Quesada started always feeling even more anxious about making a mistake and worried Greiling was targeting him.

s.   On or around July 17, 2019, Quesada began having pain in his shoulder and visited physician assistant, Ryan Hastings and orthopedist, Dr. Mikalian, M.D. Dr. Mikalian diagnosed Quesada with a torn rotator cuff and torn bicep and scheduled Quesada for shoulder surgery on November 8, 2019. Based on his doctor's recommendation, Quesada asked Crandall to place him on light duty, such as going on shorter, less strenuous routes, so as not to strain his shoulder so much. Crandall refused and shockingly told Quesada that he must work without restrictions or not work at all, despite Quesada having a doctor's note requiring him to be put on light duty.

t.   Quesada continued to work the strenuous routes Crandell assigned to him. On or around November of 2019, Quesada's injuries developed to a bicep's tendon tear, and a full thickness rotator cuff tear.

u.   After surgery, Ryan Hastings approved Quesada for FMLA/CFRA leave from November 11, 2019 to February 10, 2020. Quesada reported the bad news to Crandall and physician assistant, Ryan Hastings approved Quesada for FMLA/CFRA leave from November 11, 2019 to February 10, 2020. Quesada's shoulder surgery took place at the Sutter Gould Medical Foundation on November 12, 2019.

v.   On or around January 14, 2020, Quesada received from Polfliet a letter stating that his FMLA leave would be exhausted by February 3, 2020, and that, if he wanted to continue medical coverage through entity defendants, he was to do so under COBRA. Quesada did not understand this, as his FMLA/CFRA leave had previously been approved for more time.  As a result, Quesada was placed on administrative leave and forced to apply for state disability, as the COBRA payments were too expensive for him.

18.   *Grieling continues making ageist comments and pushing Quesada to resign, causing severe emotional distress:*

a.   After his surgery, Quesada was required to do physical therapy as part of his recovery.  Quesada's condition was improving slower than originally expected and his doctor continued to extend the duration of his medical leave.

b.   On or around June 29, 2020, Quesada received an unexpected phone call from Grieling.  During this phone call, Grieling told Quesada, *again,* "You know you aren't coming back," and again told him to "make it easier" on himself by resigning.  Grieling also told Quesada that it would be best for him to retire because he was "up in age." Quesada again said that he refused to retire and told Grieling that he thought his comments were harassing.  Grieling responded by hanging up on Quesada.

19.   *Quesada complains about Grieling's harassing comments, but to no avail:*

a.   On or around September 28, 2020, Grieling called Quesada again about coming back to work.  He again, repeatedly, told Quesada, "You should just resign, and we can get this thing taken care of."  Quesada again told Grieling that he did not want to resign and that he felt as if he were being harassed.

b.   Shortly thereafter, Quesada submitted to Grieling an extension changing his return date to January 30, 2021, and indicating that he would not need restrictions upon returning to work.

c.   On or around September 29, 2020, Grieling called Quesada again and told Grieling, without any justification, that he was required to send him his personally identifiable health information. Quesada told Greiling that doing so did not seem right and

that he would only provide his return-to-work documentation. Grieling did not respond and hung up. Quesada could no longer take the discrimination and harassment to which he was being subjected. Quesada did not feel safe in his job, a job he planned to retire in.

d.    Quesada began experiencing tremendous anxiety, restlessness, depression, and sleeplessness; he feared losing his job as a result of his disability and age. Quesada visited his doctor, who prescribed medicines for anxiety, sleeplessness, and hypertension. This stress and anxiety caused Quesada to fear returning to work and being subjected to more discrimination and harassment by Grieling.

e.    Defendant Bauer, senior human resources generalist, e-mailed Quesada on September 29, 2020, at 9:29 a.m., indicating that medical documentation from his July 16, 2020 doctor's note explained that he would be able to return to work as of September 30, 2020, and that failure to communicate would result in voluntary resignation.

f.    Quesada called Bauer to complain about Grieling's conduct. During the call, Quesada explained that he believed Grieling was targeting him because of his age by pushing him to resign. Bauer offered no solutions for Quesada and was extremely unsympathetic during the call. At one point, she even echoed Grieling's outrageous comments and told Quesada that he should consider resigning, as he had been on leave for a while. Quesada explained that he did not want to resign. He followed up with an e-mail to Bauer, complaining about Grieling's harassing conduct and providing the contact information for his doctor. Further, he confirmed that fax confirmation of the doctor-ordered extension of his leave had been provided to entity defendants. Nothing was done to address his concerns.

20.    *Quesada's employment is wrongfully terminated:*

a.    On that same day, Quesada received a call from Grieling; it went to voice mail. In the voice mail message, Grieling told Quesada that defendants could no longer hold his position open and that he should re-apply "after he passes his physicals and is healthy."

b.    On September 30, 2020, Bauer called Quesada and told him that defendants

did receive the fax of his leave extension, "but that it would probably be easier if [he] just resigned." Quesada explained that he had told her and Grieling that he did not intend to resign and that Grieling had called the day before and told him that his employment was terminated. Bauer did not respond and ended the phone call.

21. *Economic damages:* As a consequence of defendants' conduct, plaintiff has suffered and will suffer harm, including lost past and future income and employment benefits, damage to his career, and lost wages, overtime, unpaid expenses, and penalties, as well as interest on unpaid wages at the legal rate from and after each payday on which those wages should have been paid, in a sum to be proven at trial.

22. *Non-economic damages:* As a consequence of defendants' conduct, plaintiff has suffered and will suffer psychological and emotional distress, humiliation, and mental and physical pain and anguish, in a sum to be proven at trial.

23. *Punitive damages:* Defendants' conduct constitutes oppression, fraud, and/or malice under California Civil Code section 3294 and, thus, entitles plaintiff to an award of exemplary and/or punitive damages.

a. *Malice:* Defendants' conduct was committed with malice within the meaning of California Civil Code section 3294, including that (a) defendants acted with intent to cause injury to plaintiff and/or acted with reckless disregard for plaintiff's injury, including by terminating plaintiff's employment and/or taking other adverse job actions against plaintiff because of his age, disability, medical condition, physical disability (both perceived and actual), medical leave status, association, other protected characteristics, other protected categories, and/or good faith complaints, and/or (b) defendants' conduct was despicable and committed in willful and conscious disregard of plaintiff's rights, health, and safety, including plaintiff's right to be free of discrimination, harassment, retaliation, abuse of the requirements of accommodation and engaging in the interactive process, and wrongful employment termination.

b. *Oppression:* In addition, and/or alternatively, defendants' conduct was committed with oppression within the meaning of California Civil Code section 3294,

including that defendants' actions against plaintiff because of his age, disability, medical condition, physical disability (both perceived and actual), medical leave status, association, other protected characteristics, other protected categories, and/or good faith complaints were "despicable" and subjected plaintiff to cruel and unjust hardship, in knowing disregard of plaintiff's rights to a work place free of discrimination, harassment, retaliation, abuse of the requirements of accommodation and engaging in the interactive process, and wrongful employment termination.

c. *Fraud:*  In addition, and/or alternatively, defendants' conduct, as alleged, was fraudulent within the meaning of California Civil Code section 3294, including defendants asserted false (pretextual) grounds for terminating plaintiff's employment and/or other adverse job actions, thereby to harm plaintiff and deprive him of legal rights.

24.  *Attorneys' fees:*  Plaintiff has incurred and continues to incur legal expenses and attorneys' fees.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

25.  On or about April 19, 2021, Quesada filed a timely charge of discrimination with the California Department of Fair Employment and Housing ("DFEH"), which issued a Notice of Case Closure and Right to Sue for each state law discrimination claim alleged here.

26.  This suit is brought within one year of plaintiff's "right to sue" letters.

## FIRST CAUSE OF ACTION
## (Discrimination on the Bases of Age, Medical Leave, and
## Disability (Government Code § 12900, *et seq.*)—Against
## Entity Defendants and Does 1 to 100, Inclusive)

27.  Plaintiff repeats, re-alleges, and incorporates by reference the allegations in all paragraphs set forth above and below, as though fully stated here.

28.  At all times herein mentioned, FEHA, Government Code section 12940, *et seq.,*

1    was in full force and effect and was binding on defendants.

2        29.  Defendants' conduct, as alleged, violated FEHA, and defendants committed

3    unlawful employment practices, including by the following bases for liability:

4            a.  Taking adverse employment actions against plaintiff, such as discharging,

5    demoting, removing responsibilities, barring, refusing to transfer, retain, hire, select,

6    and/or employ, and/or otherwise discriminating against plaintiff, in whole or in part on the

7    bases of plaintiff's age, disability (actual, perceived, and/or history of), taking and

8    requesting leave, and/or other protected characteristics, in violation of Government Code

9    section 12940(a);

10           b.  Discriminating against plaintiff, in whole or in part on the bases of plaintiff's

11   age, disability (actual, perceived, and/or history of), taking or requesting leave, and/or

12   other protected characteristics, in violation of Government Code section 12940(a);

13           c.  Failing to take all reasonable steps to prevent discrimination, in violation of

14   Government Code section 12940(k).

15       30.  On the basis of the above, plaintiff believes that his age, disability taking or

16   requesting leave, and/or other protected characteristics were substantial motivating factors

17   in defendants' mistreatment of plaintiff, his subjection to adverse employment actions,

18   and the termination of his employment.

19       31.  As a proximate result of defendants' willful, knowing, and intentional discrimi-

20   nation against plaintiff, plaintiff has suffered and continues to suffer humiliation, emo-

21   tional distress, and physical and mental pain and anguish, all to his damage in a sum

22   according to proof

23       32.  Defendants' misconduct was committed intentionally, in a malicious, fraudulent,

24   despicable, and/or oppressive manner, and this entitles plaintiff to punitive damages

25   against defendants.

26       33.  Plaintiff has incurred and continues to incur legal expenses and attorneys' fees.

27   Pursuant to Government Code section 12965(b), plaintiff is entitled to recover reasonable

28   attorneys' fees and costs (including expert costs) in an amount according to proof.

## SECOND CAUSE OF ACTION

### (Harassment on the Bases of Age and Disability

### (Government Code § 12900, *et seq.*)—Against All

### Defendants and Does 1 to 100, Inclusive)

34.   Plaintiff repeats, re-alleges, and incorporates by reference the allegations in all paragraphs set forth above and below, as though fully stated here.

35.   At all times herein mentioned, FEHA, Government Code section 12940, *et seq.,* was in full force and effect and was binding on defendants.

36.   Defendants' conduct, as alleged, violated FEHA, and defendants committed unlawful employment practices, including by the following bases for liability:

a.   Taking adverse employment actions against plaintiff, such as discharging, demoting, removing responsibilities, barring, refusing to transfer, retain, hire, select, and/or employ, and/or otherwise discriminating against plaintiff, in whole or in part on the bases of plaintiff's age (at or more  than 40), disability (actual, perceived, and/or history of), and/or other protected characteristics, in violation of Government Code section 12940(a);

b.   Harassing plaintiff, in whole or in part on the bases of plaintiff's age, disability (actual, perceived, and/or history of), and/or other protected characteristics, in violation of Government Code section 12940(a);

c.   Pursuant to Government Code section 12923(b), a single incident of harassing conduct is sufficient to create a hostile work environment if the harassing conduct has unreasonably interfered with plaintiff's work performance or created an intimidating, hostile, or offensive work environment.

d.   Failing to take all reasonable steps to prevent harassment, in violation of Government Code section 12940(k).

37.   On the basis of the above, plaintiff believes that his age, disability, and/or other protected characteristics were substantial motivating factors in defendants' mistreatment of plaintiff, his subjection to adverse employment actions, and the termination of his

employment.

38.   As a proximate result of defendants' willful, knowing, and intentional harassment of plaintiff, plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to his damage in a sum according to proof.

39.   Defendants' misconduct was committed intentionally, in a malicious, fraudulent, despicable, and/or oppressive manner, and this entitles plaintiff to punitive damages against defendants.

40.   Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Government Code section 12965(b), plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

**THIRD CAUSE OF ACTION**

**(Retaliation for the Exercise of Rights Guaranteed Under**

**FEHA, *e.g.,* Participating in Protected Activities and**

**Opposing Defendants' Failure to Provide Such Rights**

**(Government Code § 12900, *et seq.*)—Against Entity**

**Defendants and Does 1 to 100, Inclusive)**

41.   Plaintiff repeats, re-alleges, and incorporates by reference the allegations in all paragraphs set forth above and below, as though fully stated here.

42.   At all times herein mentioned, FEHA, Government Code section 12940, *et seq.,* was in full force and effect and was binding on defendants.  This statute requires defendants to refrain from retaliating against any employee for making complaints, opposing discrimination, harassment, or retaliation, or otherwise engaging in activity protected by FEHA, including for seeking to exercise rights guaranteed under FEHA, opposing defendants' failure to provide rights, including discriminating against, harassing, or retaliating against an employee for requesting an accommodation, regardless of whether the request were granted, and the right to be free of retaliation, in violation of Government Code section 12940(h).

43.  Defendants' conduct, as alleged, violated FEHA, and defendants committed unlawful employment practices, including by the following bases for liability:

a.  Retaliating against plaintiff for seeking to exercise rights guaranteed under FEHA and/or opposing defendants' failure to provide such rights, in violation of Government Code section 12940(h);

b.  Failing to take reasonable steps to prevent retaliation, in violation of Government Code section 12940(j);

c.  Failure to (1) engage in a timely, good faith interactive process to accommodate or (2) attempt to provide any reasonable accommodation of plaintiff's known disabilities, in violation of Government Code section 12940(n).

44.  Instead, defendants discriminated against, harassed, and retaliated against plaintiff (up to and including his employment termination) for requesting a reasonable accommodation and/or for giving defendants notice that a reasonable accommodation was necessary.  On the basis of the above, plaintiff believes and alleges that his participation in protected activities was a substantial motivating factor in defendants' actions against him that were meant to deter him from making complaints and opposing FEHA violations, including adverse employment actions, until that course of wrongful conduct culminated in the termination of his employment.

45.  As a proximate result of defendants' willful, knowing, and intentional retaliation against plaintiff, plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

46.  As a proximate result of defendants' willful, knowing, and intentional retaliation against plaintiff, plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to his damage in a sum according to proof.

47.  Defendants' misconduct was committed intentionally, in a malicious, fraudulent, despicable, and/or oppressive manner, and this entitles plaintiff to punitive damages against defendants.

48.   Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Government Code section 12965(b), plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

## FOURTH CAUSE OF ACTION
### (Failure to Provide Reasonable Accommodation
### (Government Code § 12940(a), (i), (m), (n))—Against Entity
### Defendants and Does 1 to 100, Inclusive)

49.   Plaintiff repeats, re-alleges, and incorporates by reference the allegations in all paragraphs set forth above and below, as though fully stated here.

50.   At all times herein mentioned, FEHA, Government Code section 12940(a), (i), (m), and (n), was in full force and effect and was binding on defendants.  This statute requires defendants to provide reasonable accommodations to known disabled employees.

51.   Defendants wholly failed to attempt to provide any reasonable accommodation of plaintiff's known disabilities.  Defendants used plaintiff's disabilities and his need to take medical leave as an excuse for terminating plaintiff's employment.

52.   Plaintiff believes, and on that basis alleges, that his disabilities were a motivating factor in defendants' decision to terminate plaintiff's employment.

53.   As a proximate result of defendants' willful, knowing, and intentional miscon-duct, plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

54.   As a proximate result of defendants' willful, knowing, and intentional miscon-duct, plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to his damage in a sum according to proof.

55.   Defendants' misconduct was committed intentionally, in a malicious, fraudulent, despicable, and/or oppressive manner, and this entitles plaintiff to punitive damages against defendants.

56.   Plaintiff has incurred and continues to incur legal expenses and attorneys' fees.

Pursuant to Government Code section 12965(b), plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

## FIFTH CAUSE OF ACTION
### (Failure to Engage in the Interactive Process
### (Government Code § 12940(a)—Against Entity
### Defendants and Does 1 to 100, Inclusive)

57.   Plaintiff repeats, re-alleges, and incorporates by reference the allegations in all paragraphs set forth above and below, as though fully stated here.

58.   At all times herein mentioned, FEHA, Government Code section 12940(a), (i), (m), and (n), was in full force and effect and was binding on defendants.  This statute requires defendants to engage in a timely, good faith interactive process to accommodate known disabled employees.

59.   Defendants wholly failed to engage in a timely, good faith interactive process with plaintiff to accommodate his known disabilities and medical condition.  Instead, defendants ignored his requests, as well as his visible medical needs, and terminated his employment.

60.   Plaintiff believes, and on that basis alleges, that his disabilities were a motivating factor in defendants' decision to terminate plaintiff's employment.

61.   As a proximate result of defendants' willful, knowing, and intentional misconduct, plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

62.   As a proximate result of defendants' willful, knowing, and intentional misconduct, plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to his damage in a sum according to proof.

63.   Defendants' misconduct was committed intentionally, in a malicious, fraudulent, despicable, and/or oppressive manner, and this entitles plaintiff to punitive damages against defendants.

64.   Plaintiff has incurred and continues to incur legal expenses and attorneys' fees.

Pursuant to Government Code section 12965(b), plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

### SIXTH CAUSE OF ACTION

### (Failure to Prevent Discrimination, Harassment, and

### Retaliation (Government Code § 12900, *et seq.*)—Against

### Entity Defendants and Does 1 to 100, Inclusive)

65.   Plaintiff repeats, re-alleges, and incorporates by reference the allegations in all paragraphs set forth above and below, as though fully stated here.

66.   At all times herein mentioned, FEHA, Government Code section 12940(k), was in full force and effect and was binding on defendants.  This statute states that it is an unlawful employment practice in California for an employer "to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring."

67.   During the course of plaintiff's employment, defendants failed to prevent their employees from engaging in intentional actions that resulted in plaintiff's being treated less favorably because of plaintiff's age and/or disability and/or or because plaintiff had engaged in protected activity.

68.   Plaintiff believes that he was subjected to discrimination, harassment, and retaliation because of his age, disability, and/or protected activity.

69.   As a proximate result of defendants' willful, knowing, and intentional misconduct, plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

70.   As a proximate result of defendants' willful, knowing, and intentional misconduct, plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to his damage in a sum according to proof.

71.   Defendants' misconduct was committed intentionally, in a malicious, fraudulent, despicable, and/or oppressive manner, and this entitles plaintiff to punitive damages against defendants.

72. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Government Code section 12965(b), plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

## SEVENTH CAUSE OF ACTION
### (Whistle-Blower Retaliation (Labor Code § 1102.5, *et seq.*)—Against Entity Defendants and Does 1 to 100, Inclusive)

73. Plaintiff repeats, re-alleges, and incorporates by reference the allegations in all paragraphs set forth above and below, as though fully stated here.

74. At all relevant times, Labor Code section 1102.5 was in effect and was binding on defendants. This statute prohibits defendants from:

a. Making, adopting, or enforcing any rule, regulation, or policy preventing an employee from disclosing information to a government or law enforcement agency or to a person with authority over the employee who has authority to investigate, discover, or correct the violation or noncompliance, or from providing information to or testifying before any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties;

b. Retaliating against an employee for disclosing information, or because the employer believes that the employee disclosed or might disclose information, to a government or law enforcement agency or to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance, or for providing information to or testifying before any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether

disclosing the information is part of the employee's job duties;

      c.  Retaliating against an employee for refusing to participate in an activity that would result in a violation of a state or federal statute or a violation of or noncompliance with a local, state, or federal rule or regulation.

75.  Here, defendants violated each of the aforementioned subsections after plaintiff took part in numerous instances of protected activity.  Government Code § 12900, *et seq.;* CFRA; Labor Code §§ 232.5, 1102.5.  Plaintiff complained about the lack of reasonable accommodations and about defendants' failure to engage in the interactive process.

76.  In response, defendants retaliated against plaintiff by discriminating against him, harassing him, and taking actions that would deter a reasonable person from making complaints, such as subjecting him to adverse employment actions, including the termination of his employment.

77.  As a proximate result of defendants' willful, knowing, and intentional violations of Labor Code section 1102.5, plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

78.  As a result of defendants' adverse employment actions against plaintiff, plaintiff has suffered general and special damages in sums according to proof.

79.  Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Labor Code section 1102.5(j), plaintiff is entitled to recover reasonable attorneys' fees in an amount according to proof.

80.  Defendants' misconduct was committed intentionally, in a malicious, oppressive, and/or fraudulent manner, and this entitles plaintiff to punitive damages against defendants.

///

///

///

///

## EIGHTH CAUSE OF ACTION

### (CFRA Leave Retaliation (Government Code § 12900, *et seq.*)—Against Entity Defendants and Does 1 to 100, Inclusive)

81. Plaintiff repeats, re-alleges, and incorporates by reference the allegations in all paragraphs set forth above and below, as though fully stated here.

82. At all times mentioned herein, the CFRA, Government Code section 12945.1-12945.2, was in full force and effect and was binding on defendants.

83. Defendants' conduct, as alleged, violated FEHA, Government Code section 12900, *et seq.,* and defendants committed unlawful employment practices, including by the following:

     a. Taking adverse employment actions against plaintiff, such as discharging, barring, refusing to transfer, retain, hire, select, and/or employ, and/or otherwise discriminating against plaintiff, in whole or in part on the basis of plaintiff's taking protected CFRA leave, in violation of Government Code section 12940(a), 12940(h), and 12945.2(l);

     b. Retaliating against plaintiff for seeking to exercise rights guaranteed under FEHA and/or opposing defendants' failure to provide such rights, in whole or in part on the basis of plaintiff's taking protected CFRA leave, in violation of Government Code sections 12940(a), 12940(h), and 12945.2(l);

     c. Failing to provide plaintiff with requisite statutory leave, violating notice and/or other procedural requisites of leave, and/or retaliating against plaintiff for taking leave, in violation of Government Code section 12945.2.

84. Plaintiff believes, and on that basis alleges, that his CFRA leave was a substantial motivating factors in defendants' employees' discrimination against, harassment of, and retaliation against him.

85. As a proximate result of defendants' willful, knowing, and intentional misconduct, plaintiff has sustained and continues to sustain substantial losses of earnings and

other employment benefits.

86.    As a proximate result of defendants' willful, knowing, and intentional misconduct, plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to his damage in a sum according to proof.

87.    Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Government Code section 12965(b), plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

88.    Defendants' misconduct was committed intentionally, in a malicious, oppressive, and/or fraudulent manner, and this entitles plaintiff to punitive damages against defendants.

## NINTH CAUSE OF ACTION

### (Breach of Implied-in-Fact Contract Not to
### Terminate Employment Without Good Cause
### (*Marketing West, Inc. v. Sanyo Fisher* (1992) 6
### Cal.App.4th 603; Civil Code § 1622)—Against Entity
### Defendants and Does 1 to 100, Inclusive)

89.    Plaintiff repeats, re-alleges, and incorporates by reference the allegations in all paragraphs set forth above and below, as though fully stated here.

90.    On the basis of oral assurances of continued employment given to plaintiff by defendants' supervisors, the length of plaintiff's employment with defendants, defendants' actual practice of terminating employment only for cause, and the industry standard for the business defendants engaged in of terminating employment only for cause, plaintiff and defendants shared the actual understanding that plaintiff's employment could and would be terminated only for cause. This shared understanding resulted in an implied contract requiring that defendants have good cause to terminate plaintiff's employment.

91.    Defendants, through their agents, entered an express oral agreement not to terminate plaintiff's employment except for good cause. Defendants represented to plaintiff

that his employment would not be terminated unless his job performance were unsatisfactory.  Plaintiff decided to work for defendants on the basis of these promises and agreed to work for defendants on the basis of these promises.  Plaintiff performed all of the duties required of him under this agreement during his employment.

92.   Defendants and their managers and supervisors terminated plaintiff's employment without good cause, violating the implied-in-fact contract they had with him.

93.   As a proximate result of defendants' willful breach of the implied-in-fact contract not to terminate employment without good cause, plaintiff has suffered and continues to suffer damages, including losses of earnings and benefits, in a sum according to proof.

## TENTH CAUSE OF ACTION

### (Negligent Hiring, Supervision, and Retention (*Doe v.*
### *Capital Cities* (1996) 50 Cal.App.4th 1038)—Against Entity
### Defendants and Does 1 to 100, Inclusive)

94.   Plaintiff repeats, re-alleges, and incorporates by reference the allegations in all paragraphs set forth above and below, as though fully stated here.

95.   Defendants owed a duty of care to plaintiff to appoint, hire, retain, and supervise persons who would not engage in retaliatory, harassing, or discriminatory conduct.  Defendants owed a duty of care to plaintiff not to retain managers or employees who would discriminate against, harass, or retaliate against employees for engaging in protected activities.  Defendants owed a duty of care to plaintiff to supervise their managers and employees closely to ensure that they would refrain from harassing and retaliating against plaintiff.

96.   Defendants breached these duties.  As a result, defendants caused damages to plaintiff.  As a proximate result of defendants' negligent hiring, retention, and supervision of their managers and employees, plaintiff has suffered and continues to suffer damages, including losses of earnings and benefits, according to proof.

## ELEVENTH CAUSE OF ACTION

### (Wrongful Termination of Employment in Violation
### of Public Policy (*Tameny v. Atlantic Richfield Co.*
### (1980) 27 Cal.3d 167)—Against Entity Defendants
### and Does 1 to 100, Inclusive)

97.   Plaintiff repeats, re-alleges, and incorporates by reference the allegations in all paragraphs set forth above and below, as though fully stated here.

98.   Defendants terminated plaintiff's employment in violation of various funda-mental public policies underlying both state and federal laws.  Specifically, plaintiff's employment was terminated in part because of his protected status (*i.e.,* age, disability, medical condition, physical disability (both perceived and actual), medical leave status, and association, and/or other protected characteristics) and/or protected activity (*i.e.,* for making lawful complaints and/or requesting accommodations).  These actions were in violation of, among other things, FEHA (Government Code section 12900, *et seq.*), CFRA, and various Labor Code sections, including sections 232.5 and 1102.5.

99.   As a proximate result of defendants' wrongful termination of plaintiff's employment in violation of fundamental public policies, plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

100.   As a result of defendants' wrongful termination of his employment, plaintiff has suffered general and special damages in sums according to proof.

101.   Defendants' wrongful termination of plaintiff's employment was done inten-tionally, in a malicious, fraudulent, and/or oppressive manner, and that entitles plaintiff to punitive damages.

102.   Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Code of Civil Procedure sections 1021.5 and 1032, *et seq.,* Government Code section 12965(b), and Civil Code section 3294, plaintiff is entitled to recover reasonable attorneys' fees and costs in an amount according to proof.

# TWELFTH CAUSE OF ACTION

## (Intentional Infliction of Emotional Distress (*Hughes*

## *v. Pair* (2009) 46 Cal.4th 1035)—Against All

## Defendants and Does 1 to 100, Inclusive)

103.   Plaintiff repeats, re-alleges, and incorporates by reference the allegations in all paragraphs set forth above and below, as though fully stated here.

104.   Defendants' discriminatory, harassing, and retaliatory actions against plaintiff constituted extreme and outrageous misconduct and caused plaintiff severe emotional distress.  Defendants were aware that treating plaintiff in the manner alleged above, including depriving plaintiff of his livelihood, would devastate plaintiff and cause him extreme hardship.

105.   As a proximate result of defendants' extreme and outrageous conduct, plaintiff has suffered and continues to suffer severe emotional distress.  Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits as a result of being emotionally distressed.

106.   As a proximate result of defendants' extreme and outrageous conduct, plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

107.   Defendants' misconduct was committed intentionally, in a malicious, fraudulent, despicable, and/or oppressive manner, and this entitles plaintiff to punitive damages against defendants.

# PRAYER FOR RELIEF

WHEREFORE, plaintiff, Ramon Quesada, prays for judgment as follows on all causes of action:

1.   For general and special damages according to proof;

2.   For exemplary damages according to proof;

3.   For pre-judgment and post-judgment interest on all damages awarded;

4.  For reasonable attorneys' fees;

5.  For costs of suit incurred;

6.  For declaratory relief;

7.  For equitable relief, such as reinstatement, instatement, provision of opportunities to make up for lost promotional prospects, and restoration of seniority, along with any other ground for equitable relief that may arise during this litigation and any other equitable relief deemed proper by the Court; and

8.  For such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

ADDITIONALLY, plaintiff, Ramon Quesada, hereby demands a jury trial on the causes of action set forth herein.  The amount demanded exceeds $25,000.00 (Government Code § 72055).

Dated:  January 10, 2024                SHEGERIAN & ASSOCIATES, INC.

By: _____
     Mahru Madjidi, Esq.

     Attorneys for Plaintiff,
     RAMON QUESADA

PLAINTIFF'S SECOND AMENDED COMPLAINT FOR DAMAGES

QUESADA v. MARTEN TRANSPORT, LTD., et. al.     USDC Case No. 2:23-cv-00311-DAD-KJN

# PROOF OF SERVICE

## STATE OF CALIFORNIA, COUNTY OF RIVERSIDE

I am an employee in the County of Riverside, State of California. I am over the age of 18 and not a party to the within action; my business address is 3764 Elizabeth Street, Riverside, California 92506.

On January 10, 2024, I served the foregoing document, described as **"PLAINTIFF RAMON QUESADA'S SECOND AMENDED COMPLAINT FOR DAMAGES"** on all interested parties in this action as follows:

**Michael E. Brewer, Esq.**
**michael.brewer@bakermckenzie.com**
**James J. Ward, Esq.**
**joe.ward@bakermckenzie.com**
**Lily S. Duong, Esq.**
**lily.duong@bakermckenzie.com**
**Kimberly Rich, Esq.**
**kimberly.rich@bakermckenzie.com**
**Baker & McKenzie LLP**
**600 Hansen Way,**
**Palo Alto, CA 94304**

**Michelle Finkel Ferber, Esq.**
**mferber@ferberlaw.com**
**Jennifer R. Lucas, Esq.**
**jlucas@ferberlaw.com**
**Jessica M. Di Palma, Esq.**
**jdipalma@ferberlaw.com**
**FERBER LAW, APC**
**2603 Camino Ramon, Suite 385**
**San Ramon, California 94583**

☒ **(BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

☒ **(FEDERAL)** I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on January 10, 2024, at Riverside, California.

_____
Delmy Garcia